## COMMONWEALTH v. SIDNEY WARE.

APPEAL BY THE DEFENDANT FROM THE COURT OF OYER AND TERMINER OF DAUPHIN COUNTY.

Argued June 3, 1890—Decided October 6, 1890.
[To be reported.]

1. When no exceptions have been taken in the court below, the Supreme Court cannot reverse a judgment, even in a capital case, for errors committed in the trial. In the absence of exceptions, nothing comes before the court but the bare record, such as would come up upon the common-law certiorari.

2. As the Supreme Court can know nothing of a trial except as thus disclosed, it cannot review the question whether the necessary ingredients of murder in the first degree were proved to exist, as directed by § 2, act of February 15, 1870, P. L. 15, unless by proper exceptions the testimony be brought upon the record.

3. In empaneling a jury in the Court of Oyer and Terminer, the regular practice is to have the juror sworn on his voir dire prior to his examination; the refusal of a request therefor by the prisoner would be error, but if the prisoner voluntarily examine the juror, without his being sworn, the omission is not error.

4. It is not error for the court to refuse a request by the jury that the testimony of one of the witnesses be sent out to them, to settle a disputed point as to what the witness testified to; the sending out of a part of the testimony to the jury room is without precedent, and would be a palpable error.

5. That a prisoner, on trial for murder, drew his pistol and fired the fatal

Statement of Facts.

shot upon the sudden impulse of an attack upon him and of blows received, and in consequence of passion and rage thereby caused, is not sufficient to reduce the offence to manslaughter, unless in the opinion of the jury there was sufficient provocation for his rage.

6. The law is well settled that a man may not kill another in self-defence if he have other probable means of escape; and an instruction that such a killing would be justifiable, "if the jury also find that the defendant under those circumstances had no other probable means of escape," is entirely accurate.

(a) The testimony for the commonwealth, in a homicide case, tended to prove that the prisoner, while in a bar-room, drew his revolver and fired two shots, each of which took a human life; that he was not engaged in any fight, the only fight that occurred being between two other men; and that he was not struck or maltreated by any one:

7. This testimony, if believed, was sufficient to sustain a verdict of guilty of murder in the first degree; and, though contradicted by the defendant, it rendered the degree of the offence a question to be determined by the jury, under instructions as to what constitutes the different grades of homicide.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 12 May Term 1890, Sup. Ct.; court below, No. 138 June Term 1889, O. & T.

On June 13, 1889, the grand jury of Dauphin county returned as a true bill an indictment charging Sidney Ware with the murder of Morris Miller. The defendant, being arraigned, pleaded not guilty. Issue having been joined, the case was tried on September 26, 1889.

The record contained no bills of exception, none having been taken either upon the trial or at any other stage of the case. The paper-books set forth the following proceedings:

In the empaneling of the jury, the jurors, as called, were examined as to their qualifications without having been sworn,[1] and without any request on the part of either the commonwealth or the prisoner that they should be sworn. Challenges were made by the district attorney and by the prisoner, based upon the answers elicited by such examinations of jurors, and the jury was completed without the exhaustion of the peremptory challenges to which the prisoner was entitled.

The jury selected having been sworn, the commonwealth presented testimony tending to show that on the night of May 4,

1889, the prisoner and a number of others, with some of whom he was unacquainted, spent some time in the saloon or bar-room of the Lykens Valley House, at Lykens, Dauphin county; that the prisoner had done but little drinking, and was not intoxicated; that no ill feeling among the persons present existed at any time during the evening until about midnight; that, just outside the door, while the proprietor was cleaning the room preparatory to closing for the night, a personal encounter began between Henry Johns, the prisoner's companion, and Paul Shultz; that Johns and Shultz having been separated by the proprietor, the prisoner, who had gone out with Johns, stepped back into the room; that a number of the party, who were still in the room, then started to push toward the door again, and the prisoner, standing at the door-sill, fired two shots with a revolver, one of which took effect upon Morris Miller and the other upon Frederick Kindler, the result being that both Miller and Kindler died not long after; that the revolver used by the prisoner was not a self-cocking one, but had to be cocked again with the hand before firing the second shot; and that at the time the prisoner did the shooting no one was molesting him in any way, he had no reason to fear any personal violence, and was in a position to leave the bar-room without hindrance from any person.

The defendant testified, on his own behalf, that at the close of the difficulty between Johns and Shultz, the witness was proceeding on his way, thinking that everything was amicably settled, but that just then some one grabbed him by the coat collar and pushed him down on his face, and he was surrounded by a crowd of men who beat him and pushed him about; that he was forced back into the saloon, and kicked and beaten across it in his endeavors to escape, while he pleaded for a fair show; that finally, as he staggered back after receiving a blow on the head, three men made a combined rush at him, and the witness, being exhausted in breath by reason of a kick received upon his stomach, not having the strength properly to defend himself, and being struck with terror, fired without taking aim and without any intention to kill. Some corroborating testimony was presented by the prisoner.

At the close of the testimony, the court, SIMONTON, P. J.,

delivered a charge to the jury, which, after instructing them respecting the different grades of homicide and the ingredients of each, substantially in the same manner as the charge delivered by Mr. Justice AGNEW in Commonwealth v. Drum, 58 Pa. 9, continued in part as follows :

. The commonwealth, then, in this case, must satisfy you beyond a reasonable doubt, before you can convict this defendant of murder in the first degree, that he intended to kill the deceased ; that he wilfully, deliberately and premeditatedly killed . him ; that he intended to kill ; that he was conscious of that intention, and knew what he was doing in carrying it out. If he intended to kill that way, then he would be guilty of murder in the first degree. He would then have the malice that the law requires, although he had no evil feelings against the particular person whom he killed. It would not even be necessary that he intended to kill Morris Miller ; if he fired the pistol with the deliberate intent to take life, he is guilty of murder in the first degree, under these circumstances.

If he is not guilty of murder in the first degree, then you have to determine whether he is guilty of murder in the second degree ; and that means, whether, without lawful excuse, and with reckless disregard of consequences, he took the life of the deceased.

It has been suggested by the district attorney that there is some inconsistency between the two defences ; that the act was manslaughter, or, that it was done in self-defence ; and apparently there might be, yet, practically, not. It amounts to the defendant saying that I claim that the facts in evidence in this case prove that I did it in self-defence, or, they prove that I did it in sudden heat or passion. The defendant, in testifying, did not claim that he was in any heat or passion, and the jury can consider that, so far as considering the testimony is concerned ; but it is entirely competent for the defendant to set up both these defences.

If you should not find him guilty of murder in the first degree, then you will have to determine as to the other offences.

As to manslaughter, then ; was the killing done upon a sudden impulse, or in heat of passion, and was there such provocation as might naturally lead to that heat of passion ? For, as we have said to you, provocation without passion is not suffi-

cient to reduce the killing from murder to manslaughter. If a man have such provocation as naturally might lead him into a passion of rage, uncontrollable almost, we might say, and in that sudden heat he kill another, he would be guilty only of manslaughter; but, if he got into that rage without reasonable provocation, it would not excuse him. And if he had provocation and still remained cool, or did not get into a passion, that would not excuse him.

Then as to the question of self-defence. The rule there is that a person, before he can excuse killing on the ground of self-defence, must have no other reasonable or probable means of escape from either loss of his own life or serious bodily harm. If a man is attacked and his life is in danger, and it is reasonably necessary to save his life, he has the right to kill his assailant, in order to protect himself from serious bodily harm, loss of a limb, or severe wounding. If he stands his ground and kills without such, then he has gone beyond his right, and the offence would be murder in the second degree, if those facts only existed.

Now, gentlemen, you have heard the evidence in this case. It has been fairly and ably argued to you on both sides. The considerations that ought to weigh with you, in the estimation of the counsel, all of them, I think, fair to be presented to you, have been brought to your attention by the counsel on both sides, and I have no doubt that all the facts are fresh in your minds. I shall therefore not detail them, but ask you to carefully weigh and consider the case, applying these facts to these different branches of the case and of the defence as we have explained them to you. Determine, in the first place, whether the defendant is or is not guilty of murder in the first degree; or, to say it perhaps more accurately, determine whether the defendant is guilty of murder, and if so, determine the degree. If not guilty of murder, then determine, whether the defendant is guilty of manslaughter, or whether he is excusable because of his heat or passion; or, whether he was justified in what he did as a means of reasonable self-defence. . . . .

The defendant has presented these points and has asked us to give you certain instructions:

1. The intent to take life, with a full and conscious knowledge of the purpose to do so, is the distinguishing criterion of

Charge of Court below.

murder in the first degree; and, unless the jurors are satisfied from the evidence, beyond any reasonable doubt, that the defendant intended to take life at the time the shot was fired, and had a full and conscious knowledge of the purpose and intent to take life, he should not be convicted of murder in the first degree.

Answer: That we affirm.

2. Before the jurors can lawfully convict of murder in the second degree, they must be satisfied from the evidence, beyond any reasonable doubt, that the killing of Morris Miller was the result of "depravity of heart" in the defendant, and "a disposition of mind regardless of social duty."

Answer: This is affirmed, in connection with what we have said in the general charge in explanation of the meaning of the term "malice," and of the offence of murder in the second degree.

3. If the jury believe from the evidence that the defendant did not "meditate the death" of Morris Miller, or any one else; did not carry the pistol to take life, and upon the sudden impulse of an attack upon him and of blows received, drew his pistol in the consequent passion and rage caused by such attack and blows, and fired the fatal shot, then it is their duty to convict of no higher offence than manslaughter.

Answer: This is affirmed, if the jury find that there was sufficient provocation, as we have explained in the general charge.[3]

4. If the jurors are satisfied from the evidence that the defendant at the time he fired the shots, had, in good faith, a reasonable belief, founded upon facts as they appeared to him at the time, that he was in imminent peril of his life, or in danger of great bodily harm, and fired his weapon for the purpose of defending himself, then his act is justifiable, even if his belief at the time was a mistaken one; and the verdict should be one of entire acquittal.

Answer: This is affirmed, if the jury also find that the defendant under those circumstances had no other probable means of escape.[4]

As we have said, gentlemen, the facts have been so fully argued to you that we do not think it necessary to refer to them. You have them fresh before your mind, and you will consider them in the light of the legal principles we have stated. . . . .

### Opinion of Court below.

—The jury returned a verdict of guilty of murder in the first degree. The defendant then moved the court for a new trial, assigning, inter alia, as reasons therefor:

5. That the verdict was based upon a misunderstanding and erroneous recollection of the testimony of Joseph Louden, one of the witnesses examined on the trial.

6. That the court erred in not complying with a request made by the jury that certain testimony be read to. them, in order that they might be informed definitely what certain witnesses had testified to in the cause, and that such failure led to the rendering of a verdict based upon a mistaken recollection. of the testimony.

—In support of these reasons, the defendant took the depositions of three of the jurors and the sheriff. The testimony of the jurors tended to show that a dispute arose in the jury room as to what the witness Louden had testified to, the deponents maintaining that he had testified that there was a scuffle in the saloon, and that in the scuffle the prisoner got down on the floor, while the remaining nine jurors maintained the contrary; that, to settle the dispute, the jury sent the sheriff to the court with a request for Louden's testimony, but afterwards were informed by the sheriff that the request could not be granted; and that the deponents, then thinking they might be mistaken, assented to a verdict of guilty of murder in the first degree, which they would not have done had they known that their recollection was correct, as they had since found it to be.

The deposition of the sheriff was as follows:

" I am the sheriff of Dauphin county, and had charge of the jury in this case. On the morning the verdict was rendered, I was requested by Mr. Cummings, the foreman of the jury, to ask the court whether they could not have Mr. Louden's testimony read to them. I informed the court of this request, and was instructed to say to the jury that the request could not be granted, and I so informed the jury."

The opinion of the court, SIMONTON, P. J., with reference to the fifth and sixth reasons assigned for a new trial, was in part as follows:

The depositions of three of the jurors have been taken to sustain this reason [the fifth], and to show that if they had been certain that the witness named had testified that " there had

Opinion of Court below.

been a scuffle, and in that scuffle Ware got down on the floor," they would not have agreed to a verdict in the first degree. What the witness really did say was, "Going out, they were all pushing and shoving, they were all pushing and shoving. Ware got down; whether he was struck or not I do not know, I did not see anything of the kind. . . . . After Ware was let up, he went toward the door and the crowd also, and after he got to the door he fired the first shot." And in answer to a question by the court, "Can you tell us what the pushing was for, and what occasioned it?" he answered, "Not anything more but Johns and Ware going to the door and starting a fuss, and then they started in from the door."

—After citing Dalrymple v. Williams, 63 N. Y. 361 (20 Am. Rep. 544); Wright v. Telegraph Co., 20 Iowa 195; Crawford v. State, 2 Yerg. 60 (24 Am. Dec. 477), note; 3 Graham and W. on New Trials, 1428; Cook v. Castner, 9 Cush. 278; Cluggage v. Swan, 4 Binn. 150; and Norton v. Breitenbach, 1 Pears. 467, as establishing the doctrine that jurors are incompetent to impeach their verdict by testifying that they joined in it in consequence of misapprehension or mistake, the opinion continued:

But there is nothing in the depositions of the jurors that ought to move the court to disturb their verdict; nothing that tends to show that the verdict of murder in the first degree ought not to have been rendered. The utmost that it tends to show in favor of the defendant is that he was pushed down but not struck, and that after he was let up he went to the door and then turned and fired the shots. This would not show any excuse or palliation of his conduct.

The sixth reason is, that the court erred in not causing certain testimony to be read to the jury in open court, as requested by them. The request made by the jury, as we remember it, was that they might have the stenographer's notes of the one witness, Joseph Louden, named in the preceding reason. Our recollection upon this point is corroborated by the deposition of one of the jurors above referred to, who says: "The foreman sent the sheriff to the court for Louden's evidence or the stenographer's notes; he came back and reported that the court would not let us have the testimony." This request could not with safety have been complied with; and the court could not

know, and did not know, and does not now know, that the jury had any desire to come into court for further instructions. Besides, as we have seen above, there was nothing in the evidence of this witness that ought to have changed the result.

The motion for a new trial having been overruled, the court pronounced sentence of death upon the prisoner, whereupon he took this appeal specifying that the court erred:

1. In permitting the jurors to be examined touching their qualifications, without first having been sworn or affirmed to make true answers.

2. In declining to permit the testimony of Joseph Louden to be read to the jury, when requested by the jury.

3, 4. In the answers to the defendant's points. [3] [4]

5. In not fully instructing the jury upon the law as applicable to the facts of the case, and in not more fully calling their attention to the facts to which the principles of law stated by the court were to be applied by them.

6. In that the evidence was insufficient to establish the essential elements of murder in the first degree, and the verdict was unwarranted by the evidence.

*Mr. J. C. Durbin* and *Mr. S. J. M. McCarrell* (with them *Mr. Lewis M. Neiffer*), for the appellant:

1. The failure to swear the jury before their examination as to their qualifications, was irregular, and should be regarded as fatal: Zell v. Commonwealth, 94 Pa. 272; O'Mara v. Commonwealth, 75 Pa. 424; Comfort v. Mosser, 121 Pa. 455. It was the defendant's right to have the examination conducted under oath, and it was the duty of the court, without request or suggestion, to see that it was so done. The defendant could not waive that which is essential to the due and orderly administration of justice: Guyowski v. People, 1 Scam. 476; 1 Whart. Cr. L., § 145 *a;* Smith v. Commonwealth, 14 S. & R. 69.

2. It was error to decline to read the testimony of Louden to the jury, when requested so to do. That testimony was on a vital point, and that the verdict was based upon a wrongful recollection of it, is beyond dispute. Whether the request of the jury was as stated by the sheriff, or as recollected by the court, makes no difference. The material fact is that there was

Arguments.

doubt or difference of opinion in the minds of the jurors, and that this situation was communicated to the court with a request for further information. The information requested the court had no power to withhold. If it could not be given in the manner desired, the recognized method of calling the jury into open court to receive it should have been adopted: Georgia v. Brailsford, 3 Dall. 1; Cox v. Highley, 100 Pa. 253. The opinion of the judge that the testimony of Louden, even if correctly remembered, should have made no legal change in the verdict, does not meet the difficulty. The weight to be given to it and the conclusions to be drawn from it were solely for the consideration of the jury; and the jurors were competent to prove the injury resulting to the defendant: Packard v. United States, 1 G. Greene 225 (48 Am. Dec. 375); Bradley v. Bradley, 4 Dall. 112; Follansbee v. Walker, 74 Pa. 310; Haak v. Breidenbach, 3 S. & R. 204; Leonard v. Leonard, 1 W. & S. 342; Commonwealth v. Haines, 15 Phila. 363.

3. The modification by the court of the defendant's third point was calculated to mislead the jury into the belief that they must be satisfied, not only of a sufficient provocation to induce passion and rage, but also of a sufficient provocation to warrant the shooting. And the answer to the fourth point was erroneous, because its effect was an instruction to the jury to inquire whether, as a matter of fact, the defendant had other probable means of escape from the attack upon him, and that if such means of escape actually existed, although he may have been ignorant of it, his honest belief of danger and the good faith with which he fired furnished no excuse. The charge was little more than the reading, mutatis mutandis, of the instructions given by Mr. Justice AGNEW, in Commonwealth v. Drum, 58 Pa. 9. It was more meagre in its reference to the facts of the case than the charge in Meyers v. Commonwealth, 83 Pa. 131, characterized by the present Chief Justice as inadequate.

4. We confidently submit that none of the essential ingredients of murder in the first degree were proved beyond a reasonable doubt. All the circumstances clearly indicate the entire absence of deliberation and premeditation. The defendant was clearly shown to be a young man of good character and quiet, peaceable disposition, and his every act, until a few moments before the firing of the fatal shot, clearly negatives every sug-

gestion of his meditating the death of any one. A sudden fight, beginning between his companion and Shultz, was almost immediately followed by another in which he became involved and in which he was violently assaulted and beaten, and in the very midst of the attendant noise and turmoil he fired his revolver. This suddenness is opposed to premeditation: Commonwealth v. Drum, 58 Pa. 9. There were no subsequent circumstances to overcome the presumption arising from the suddenness of the occurrence, as was the case in Lanahan v. Commonwealth, 84 Pa. 80. A deliberate intent to take life' was not sufficiently proved: Pistorius v. Commonwealth, 84 Pa. 158; Murray v. Commonwealth, 79 Pa. 314.

*Mr. George Kunkel*, District Attorney, for the appellee :

1. A defendant may waive his challenge, and there is no good reason why he may not waive a step. toward the perfecting of such challenge: 1 Archb. Cr. Pl. & Pr., 64; United States v. Cornell, 2 Mas. 91; 2 Graham and W. on New Trials, 192. The refusal of the court to send Louden's testimony to the jury was a matter exclusively within the discretion of the court below. No case can be found in which the facts were reproduced to the jury. Jurors, however, are incompetent to impeach their verdict: Dalrymple v. Williams, 63 N. Y. 361 (20 Am. Rep. 544); Wright v. Telegraph Co., 20 Iowa 195; Crawford v. State, 2 Yerg. 60 (24 Am. Dec. 477); 3 Graham and W. on New Trials, 1428; Cook v. Castner, 9 Cush. 274; Cluggage v. Swan, 4 Binn. 150; Norton v. Breitenbach, 1 Pears. 467; Whart. Cr. Pl. & Pr., § 847. Hence the effect of the failure to send the testimony out cannot be known. Moreover, the depositions in support of the motion for a new trial form no part of the record: Alexander v. Commonwealth, 105 Pa. 1.

2. Upon every question of law legitimately raised by the testimony, the jury were properly instructed. Apart from all that has been said, it is a fatal objection to the first five assignments of error that they are not based upon exceptions taken in the court below: Hopkins v. Commonwealth, 50 Pa. 1; Grant v. Commonwealth, 71 Pa. 507. The only question, therefore, of which this court can take jurisdiction, is whether the necessary ingredients of murder in the first degree have

been proved to exist. The question of the prisoner's guilt or innocence it will not review: Grant v. Commonwealth, supra; Staup v. Commonwealth, 74 Pa. 458; McCue v. Commonwealth, 78 Pa. 185; Meyers v. Commonwealth, 83 Pa. 131. There was ample evidence to justify the jury in finding that Ware, when he made use of his deadly weapon, intended to kill, and that he had sufficient time to frame a deliberate design to kill: Keenan v. Commonwealth, 44 Pa. 55; Commonwealth v. Drum, 58 Pa. 9; Commonwealth v. Daley, 2 Clark 156. The question for the jury was virtually whether they would believe the testimony for the commonwealth or that of the defendant.

OPINION, MR. CHIEF JUSTICE PAXSON:

This record comes up without a single exception in the court below. It was conceded upon the argument at bar that no exceptions were taken. Yet we have assignments of error to various matters which occurred at the trial, to the charge of the court and the answers to points. Neither the charge nor the points and answers are attached to the record. In the absence of a bill of exceptions, we have nothing before us but the bare record, such as would be sent up upon a common-law writ of certiorari. The object of an exception is to place something upon the record which occurred upon the trial below. Until the matter complained of is thus placed upon the record, we can have no official knowledge of it. We can properly know nothing of a trial except as it is disclosed by the record. If we were to decide cases by what is outside of it, our decisions would be arbitrary rescripts instead of judicial decrees, and would deservedly lose the confidence of the bar and the community.

There is an orderly and legal way of bringing cases into this court for review, and of raising the questions we are asked to pass upon. It is a mistake to suppose that we possess the arbitrary power of disregarding all forms and precedents to meet the supposed justice or merits of a particular case. This is always the argument of despotic power, when it seeks to substitute its own will for the well-settled principles of the law. I can account for the entire absence of exceptions, only upon the theory that at the trial the learned counsel for the prisoner

Opinion of the Court.

were satisfied with the rulings of the court. If not so satisfied, it is difficult to understand why exceptions were not taken. It may be the counsel were disappointed in the verdict, and anticipated a conviction of a lower degree of crime. Be that as it may, the mistake of the jury, if they made one, cannot be corrected in this way. It is very clear that, as the record stands, we could not reverse this judgment, even though we were morally satisfied that error had been committed. The most we could do, under such peculiar circumstances, would be to point out the supposed error and refer it to the board of pardons.

In order that there may be no misapprehension as to the merits of this appeal, we have considered the several assignments of error as though they were sustained by a bill of exceptions.

The first assignment is, in substance, that the trial was irregularly and illegally conducted, because the jurors were examined as to their competency to serve without having been previously sworn upon their voir dire. The testimony in the cause, as well as what occurred at the empaneling of the jury, though not upon the record for the reason above given, is apparently all printed, and an inspection of it shows that the jurors were examined as to their qualifications without having been first sworn to make true answers; that no objection was made to this mode of proceeding, and that the prisoner's counsel participated in such examination without asking that they be sworn. He had the right to have them sworn; had he demanded it, the oath would no doubt have been administered. The proceeding in question was one step towards selecting a jury. When the name of the juror is called, and he comes to look upon the prisoner, the latter may challenge for cause, or he may waive his right to do so. It is said that in a capital case the prisoner cannot waive anything; that is to say, he is not bound by such waiver. This is a mistake, in the broad sense in which the proposition is usually stated. There are many things as to which his waiver would not bind him; there are, on the other hand, many matters connected with the trial which he may waive. Thus, he may waive his right to cross-examine a witness; and, as before said, he may waive his right to challenge a juror. But if he challenges the juror for cause,

Opinion of the Court.

he has a right to examine him as to his qualifications, after which, if he has not shown cause, he may challenge peremptorily, or he may waive either form of challenge and allow the juror to take his seat in the box.   If this were not so, we might have the anomaly of a challenge for cause, being abundantly sustained by the juror's answers; a waiver of the challenge by the prisoner, followed by a motion for a new trial in case of conviction, upon the ground that an incompetent juror had been permitted' to serve.   A plea in such case that the juror was not bound by his waiver would not receive much consideration.   The prisoner may waive his right to examine the juror on his voir dire.   He may accept him without asking a single question, and this is sometimes done.   The answers to questions asked upon such an examination are for the court, not for the jury.   If the prisoner is willing to put his questions to an unsworn juror, we must presume he is satisfied with the truth of the answers.   If he may waive the challenge, and the right to examine the juror on his voir dire, surely he may waive the right to have him sworn.

I have no doubt that if the prisoner had asked the court to have the jurors sworn on their voir dire before he examined them, and the court had refused his request, it would have been error.   As was said in O'Mara v. Commonwealth, 75 Pa. 424: "The proper practice is to examine jurors on their voir dire as to the opinions they have formed."   And in Zell v. Commonwealth, 94 Pa. 258, it was said by our late Brother TRUNKEY: "No request was made that the jurors be sworn on their voir dire, nor objection made to their examination without, nor exception taken to the allowance of the challenges for cause; and, therefore, the third assignment of error is groundless.   However, we will remark that, though it may not be erroneous to omit the oath, unless it be requested to be taken, yet, so far as advised, it is the more general practice, and we think the better one, to examine the juror under his oath."   Without a further examination and discussion of the authorities, I think the true rule to be deduced therefrom is that the proper practice is to swear the juror prior to his examination on his voir dire ; that, if the prisoner requests it to be done and it is refused, it is error ; yet, when the prisoner voluntarily examines the juror without his being sworn, and without ob-

jection or exception, he cannot take advantage of it after a trial upon the merits. We would not have sustained this assignment, had it an exception to support it.

The second assignment alleges that the trial was unlawful and irregular because the court did not, at the request of the jury, send out to them the testimony of Joseph Louden, to settle a disputed point in regard to what he had testified to. This assignment cannot be sustained. It would have been a mistake to send out his testimony. If the jurors had desired information as to any matter of fact or question of law, they could have come into court and stated their difficulty to the trial judge. He would have answered their inquiries, either as to the facts or the law. The sending out of a part of the testimony to the jury room is without precedent, and would have been a palpable error.

No error is perceived in the answer of the learned judge to the defendant's third point. Assuming the facts stated in the point to have been found by the jury, the offence would have been manslaughter, provided the jury also found there was sufficient provocation. This is precisely what the learned judge told them.

The answer to the defendant's fourth point was also entirely accurate. The learned judge said: "This is affirmed, if the jury also find that the defendant under those circumstances had no other probable means of escape." The law is well settled that, while a man may kill another in self-defence, he may not do so if he have other probable means of escape. When his back is to the wall, and the question is whether he shall die or his assailant, he may slay his assailant to preserve his own life; but, if he has probable means of escape without doing so, he must resort to such means before he is justified in killing his adversary. Human life is too sacred to be taken unnecessarily.

The only remaining assignment which deserves attention is the sixth, which is as follows: "The evidence in this case was not sufficient to establish the essential elements of murder in the first degree, and the verdict was unwarranted by the evidence."

Without reviewing the testimony in detail, it is sufficient to say that if that of the commonwealth is believed it sustains the verdict. The defence was, that the shooting took place in the course of a fight in a bar-room; that the prisoner was attacked

and beaten, and that the offence was manslaughter at the most. The prisoner was examined on his own behalf, and was corroborated to some extent. According to the testimony of the commonwealth, however, the prisoner was not in any fight; the fight occurred between two other men, and the prisoner was not struck or maltreated by any one; that he drew his revolver, and fired two shots, each of which destroyed a human life; and the jury have found that it was done with deliberation and an intent to take life. It may be a close case upon this point, but the jury have found the essential facts against the prisoner, and the trial judge would have assumed a grave responsibility had he disturbed the verdict upon this ground. The jury believed the commonwealth's witnesses, and we cannot say they were wrong in this. It may have gone hard with the prisoner that he carried a concealed deadly weapon,—in itself a violation of law,—ready to be used upon any occasion to take life, and they may have thought that one life was not too much to atone for the two he had taken. However this may be, there was the use of a deadly weapon, and the fact that not one but two shots were fired and two lives sacrificed may have had its effect in convincing the jury that when they were fired it was the deliberate intent of the prisoner to take life. In any event, it was a question for the jury; and, unfortunately for the appellant, they have decided against him, under adequate and proper instructions from the court in regard to what is necessary to constitute murder in the first degree.

Our conclusion is, that had this case come up in proper shape, with the errors assigned based upon a sufficient bill of exceptions, we could not have reversed this judgment.

> The judgment of the Oyer and Terminer is affirmed, and the record remitted to that court for the purpose of execution.