## CUNNINGHAM v. PATTON.

Where adverse possession is proved by parol testimony only, it is a mere question for the jury whether it was continuous.

If the tenant leaves the premises for five months for a special purpose, with an intention of returning, the continuity of his possession is not broken.

One entering under a parol sale, *or mortgage* by a former occupant, may tack the adverse possession of such occupant to his own.

Where a jury required further instruction, and it was given to them by the court in the absence of one of the parties or their counsel, and also parts of the charge and notes of evidence read to them, it was held not to be a ground for reversal.

In error from the District Court of Allegheny.

*Sept.* 7. This was an ejectment for land, to which the plaintiff showed title by patent to his ancestor in 1785. The defendant rested on the statute of limitations; and the question was whether there had been continuity of adverse possession. The action was brought in 1843. The defendant showed that he alone,

or Duval with him, entered in 1819, and put up a house and made some improvements. Defendant having moved away, Duval stayed there some time, and in December, 1821, left the place with his family to work in a factory until they earned money enough to buy a horse. When he left, it was with an intention of returning, which he did with his family in the following April; and there was evidence that Duval's possession was with the consent of defendant—his intention being to build a house on an adjoining tract. There was also evidence that Duval claimed title for himself. There was evidence that Duval had pledged his right to defendant as security for a debt paid on his account. When he afterwards left, he was followed by persons claiming under defendant. In the assessments, from 1820 to 1824, Duval was stated to be "tenant, owner not here." In 1824, it was assessed to Duval and Patton; from 1826 to 1832, in the name of defendant's father, who, it was shown, was put in possession by defendant, and subsequently it was assessed to defendant's brother.

The court (SHALER, J.) told the jury it was immaterial whether Duval entered for himself or defendant, since Duval either sold or mortgaged the land to defendant; though there could be no valid parol mortgage, yet the possession was thereby rendered continuous. There was no suspension of the possession by reason of Duval having left it for a short time, under the circumstances.

The errors assigned were in these two points, and leaving the question of continuity of possession to the jury. After the jury retired, they desired further information; and the learned judge directed them to be brought into the court-room, where he read to them the testimony from his notes, relating to Duval leaving the land—explained to them what amounted to an entry, and read so much of the charge as related to the transfer by Duval, stating it was immaterial whether he sold or mortgaged, if defendant entered under that arrangement and had had continuous possession.

The error assigned on this point was in instructing the jury on material points, without the knowledge of plaintiff or his counsel.

*Bakewell* and *Dunlop*, for plaintiff in error, cited Rung v. Shoenberger, 2 Watts, 23; Weidler v. Farmers' Bank of Lancaster, 11 Serg. & Rawle, 134; Hawk v. Senseman, 6 Serg. & Rawle, 21; Royer et al. v. Benlow, 10 Serg. & Rawle, 206; Overfield v. Christie, 7 Serg. & Rawle, 175; Miller v. Shaw, Ibid. 129; McCall v. Neeley, 3 Watts, 73; McFarlane v. Hall, Ibid. 37; Woods v. Farmer, 10 Watts, 195; Hale v. Henrie, 2 Watts, 147; Bishop v. Lee,

3 Barr, 214; Greber v. Kleckner, 2 Barr, 289; McIntyre v. Jarvey, 17 Serg. & Rawle, 109; Pederick v. Searl, 5 Serg. & Rawle, 236.

*Burke*, contrà—That residence is not necessary to make an adverse possession—cited Johnston v. Irwin, 3 Serg. & Rawle, 292; Overfield v. Christie, 7 Serg. & Rawle, 177; Criswell v. Altemus, 7 Watts, 580; Cluggage et al. v. Lessee of Duncan, 1 Serg. & Rawle, 122; Hockenbury v. Snyder, 2 Watts & Serg. 240.

*Sept.* 21.   COULTER, J.—Patton, the defendant, claims to hold the land under the statute of limitations and possession for twenty-one years.   The court below charged the jury affirmatively on all the points submitted by the plaintiff's counsel, in relation to the statute, and seem to have stated the principles of law accurately.   But, in their instructions to the jury, in relation to the application of these principles to the facts developed by the evidence, the counsel for the plaintiff alleges that the court erred, and assigns several errors—the first three of which resolve themselves into two *postulata*, the answer to which will satisfy the three assigned errors.

The first is, that the continuity of possession from 1819, when Duval entered, until the institution of this suit, was not maintained; and that the possession of the different persons who occupied was not sufficiently connected.

The second is, that the admitted gap in the actual occupancy of the premises for four months, in the autumn of 1823, and beginning of the year 1824, was such an interruption of the possession as to prevent the statute from running from the year 1819, the time of entry.   On both these points the judgment of this court is against the plaintiff.

With regard to the first, it may be observed that it is a question of fact, which was properly submitted to the jury.   There was no writing, or document, to be construed.   The contract between Duval and Patton was by parol; and all evidence of connection between the different occupants, and the continuity and identity of their possession, was of the same character.   Thus it is proved that Benjamin Patton entered in 1819, and that Duval entered very shortly afterwards; that these persons were brothers-in-law, and that Duval continued the possession for several years, during which time a house and barn were erected, and land cleared; and that, in December, 1823, Duval was under the necessity of removing to a factory for the purpose of earning money to buy a horse,

when he left the actual occupancy, and, I presume, found it convenient to take his family with him, (who can account for the shifts produced by the *res angustæ domi;*) but with the declared purpose and intention of returning in the spring, and carrying with him the *animus residendi.* He did return in the spring, in the month of April; but soon transferred his claim to Patton, either as the pledge for the payment of a horse, or as a sale, for the purpose of securing the payment for which Patton had bailed him. Duval then left and Patton entered, either by himself or his tenant, and has remained in the actual possession. The argument on behalf of the plaintiff is, that there was no legal transfer of Duval's interest, or claim, which could properly be submitted to the jury. But that is assuming a conclusion. The legality, or efficiency, of the transfer, even between Duval and Patton, might depend altogether upon facts, to be resolved by the jury. In the early history of Pennsylvania jurisprudence, inchoate rights to possession of land, such as settlements and improvements, were treated as chattels, and sold and bought as such. But, for many years, more than half a century, they have been recognised as real estate, and subject to the rules which apply to the transfer and sale of the realty. But a parol contract for valuable consideration, respecting the sale of land, has always been valid as a contract in Pennsylvania. It may not be accompanied by those acts which would vest the equitable estate in the vendee, but is always sufficient to authorize him in taking possession with the assent of the vendor. But it must be observed that it is not the vendee, or his heirs, who attempt to impeach the transfer in this case, but a stranger to the contract, who is neither party nor privy, and who seeks to interpose his veto upon an arrangement, or contract, with which he has nothing to do as a contract, and, with regard to the efficiency of which between the parties, he is an alien. This contract was properly submitted to the jury as evidence of the connection and privity of possession between Duval and Patton; whether it was sufficiently made out by the evidence, was also for the jury; and altogether whether the transfer constituted a continuation of Duval's possession, by the will and consent of himself and Patton.

In relation to the gap in the possession, of four months, to wit, from December, 1823, till April, 1824, there is nothing in the instruction of the court below to justify the reversal of the judgment. It is true, that, when an intruder enters upon the land of another person, and afterwards leaves and abandons the possession, so as to evince a design to allow it to return to the condition

in which he found it, the constructive possession will revest in the owner, and the statute be removed. But it is not necessary that the intruder should be constantly in the actual occupancy. Strong marks of affinity and analogy exist between his possession and that of the actual settler, to whom the law allows considerable absence for justifiable reasons, where the *animus revertendi* exists. We see no good reasons why the same rule should not be extended to those who settle upon appropriated lands. The individual who enters may, or may not, be aware that the land is appropriated; but when it is not appropriated, his entry is good against the Commonwealth, and will be available to prevent her from granting the land to another person, although the settler may be absent for four months for suitable reasons, when the *animus residendi* is present and the *animus revertendi* brings the wanderer back. And why, under like circumstances, should it not prevent the constructive possession from returning to the owner of the legal estate? Duval and his brother-in-law had built a house and barn, and cleared land; and, during these four months, the assessor could not have returned the land as unseated. There was the house and barn, and the land cleared, to warn him to inquire after the settler: Harbeson *v.* Jack, 2 Watts, 124; Wilson *v.* Watterson, 4 Barr, 221; and if a lock had been left in the door, and any article of furniture in the house, a proceeding of forcible entry could have been sustained against any person who broke open the house, which proceeding is essentially founded on possession. Duval did return in the month of April. His absence was during the period when the farmer does not bestow his labour upon the soil; it was neither seed-time nor harvest. It was to enable him to earn money for the very purpose of procuring the means of pursuing his farming operations. The owner may be ousted by a non-resident intruder who clears and fences land, and cultivates it annually for a period of twenty-one years, so far at least as the enclosure, although there may be four months in any one year when it is not cultivated. There was, therefore, nothing erroneous in the charge of the court, in this respect, that would warrant us in disturbing the judgment. The matter was left to the jury, to whom it properly belonged; for although there may be some cases wearing such strong marks of abandonment as to justify the court in instructing the jury peremptorily on the subject, yet, in all cases of doubt, it is proper to leave it to the jury.

Another error is assigned, distinct in its character, and somewhat novel in this state. It appears that after the jury retired, and the

court adjourned, they sent an officer to the chambers of the president judge, requesting further information. He directed the jury to be brought into the court-room, and then proceeded, at their request, to read from his notes the whole of the testimony, answered a question in relation to what constituted an entry, and read, at their request, a part of his charge; when they retired in charge of the officer to their room. It does not appear that either party or their counsel were present or consulted. This proceeding is assigned for error. Juries are brought together from the body of the county, and generally composed of individuals unused to each other's mode of thinking, and unaccustomed to collating and recollecting testimony. They take no notes of the evidence, and after listening to the arguments of counsel and charge of the court, often retire no doubt with rather confused recollections of the evidence, and it is not surprising that they should differ. We can perceive no well-founded objection, therefore, that the court should refresh their memories when they request it, or instruct them further at their request in relation to the law. There would be none certainly when the jury returned into court; nor can we perceive any, where the president judge, as in this case, at the request of the jury openly and fairly read his notes of evidence, and at their request instructed farther as to the law. In Cook v. Green, 1 Halsted, 109, when a jury, after they had retired, desired further instruction from the court, and the judge (the counsel for the defendant refusing to go with him) went into the jury room and gave the explanation required, it was held that the judgment was not erroneous for such reason; and we are not inclined to molest this judgment in this assignment.

Judgment affirmed.