Lancaster Redevelopment Authority Appeal.

Argued January 5, 1967. Before BELL, C.J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Frank Edward Roda,* for appellant.

*F. Lyman Windolph,* with him *Victor R. Bieber,* and *Windolph, Burkholder & Hartman,* for appellee.

OPINION BY MR. JUSTICE COHEN, March 21, 1967:

This is an appeal by the condemning authority from a judgment entered on a verdict of $246,000 in favor of the condemnee in an eminent domain case. Pursuant to the Eminent Domain Code, Act of June 22, 1964, P.L. 84, §101 et seq., 26 P.S. §1-101 et seq. (Supp. 1966), the Redevelopment Authority of the City of Lancaster (condemnor) filed in the Court of Common Pleas of Lancaster County a declaration of taking of certain property belonging to the condemnee. At the time of the condemnation, the property consisted of a

theater operated by condemnee; a rear warehouse which was leased as a used furniture salesroom; and apartments which were vacant. The board of viewers awarded condemnee $201,500 in damages, and both condemnor and condemnee appealed to the court of common pleas. Following trial, the jury rendered a verdict in the amount of $246,000, and after dismissal of its motion for a new trial and the entry of judgment on the verdict, condemnor filed this appeal.

Condemnor has raised several meritorious issues in pursuit of a new trial. On direct examination, condemnee's expert valuation witnesses testified that the property was capable of being leased by the owner for a rental of twenty or twenty-five percent of the gross theater admission receipts. Condemnor sought to cross-examine these witnesses as to their computations in arriving at their opinions, but upon objection, was not permitted so to do. Section 705 of the Eminent Domain Code provides in relevant part: "Whether at the hearing before the viewers, or at the trial in court on appeal: (1) A qualified valuation expert may, on direct or cross-examination, state any or all facts and data which he considered in arriving at his opinion, whether or not he has personal knowledge thereof, and his statement of such facts and data and the sources of his information shall be subject to impeachment and rebuttal. (2) A qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis, which testimony may include but shall not be limited to the following: . . . (iii) The capitalization of the net rental or reasonable net rental value of the condemned property, including reasonable net rental values customarily determined by a percentage or other measurable portion of gross sales or gross income of a business which may

reasonably be conducted on the premises, as distinguished from the capitalized value of the income or profits attributable to any business conducted thereon."

In order to test the credibility of the expert witnesses for condemnee, as well as the correctness of their opinions that a reasonable net rental value of the property would be twenty percent (according to one expert) or twenty-five percent (according to another expert) of the gross receipts of the theater, condemnor sought to establish, by way of cross-examination, that a financial statement used by the witnesses in their computations indicated that the net profit of the theater to the owner-operator was substantially less than the dollar figures equivalent to the percentages of gross receipts testified to by condemnee's experts as the fair rental value of the property. Stated succinctly, all the condemnor sought to show by such cross-examination was that a tenant who leased the property at twenty or twenty-five percent of the gross receipts would pay more in rent than he derived as income on the property before the charge for rent. The comment to §705(2)(iii) states that the income or profits of any business conducted on the condemned property may not be capitalized *to show the value of the property.* But this does not prevent the use of such data to discredit the testimony of an expert witness who has presented to the finder of fact an entirely unrealistic estimation of fair market value. Accordingly, we conclude that the court below erred in restricting condemnor's cross-examination with respect thereto.

Condemnor next complains of the trial court's refusal to allow its expert valuation witnesses to testify as to the facts and data which they considered in arriving at their opinion of fair market value. In particular, condemnor argues that its expert witnesses

were *not permitted to explain the reasoning* by which they arrived at their separate opinions that ten percent of the gross theater receipts was the reasonable rental value of the property. Section 705(1) provides that a qualified witness may state any and all facts and data which he considered in arriving at his opinion. Section 705(2)(iii) somewhat qualifies §705(1) in that it does not allow testimony as to the capitalization value of the income or profits attributable to a business conducted on the condemned property. But neither in the cross-examination of condemnee's witness nor in the direct examination of its own witnesses did condemnor attempt to elicit testimony as to the capitalized value of the income or profits of the business. And that alone is prohibited by §705(2)(iii), because such a computation must necessarily take into consideration the talent or ability of the land owner to make money, which talent the late Mr. Justice Bok stated is a private, not a public concern.[1] *Sgarlat Estate v. Commonwealth*, 398 Pa. 406, 158 A. 2d 541 (1960). When it asked about the profits and expenses of the theater, condemnor merely expected the witnesses to indicate that the rental percentages arrived at by condemnee's witnesses were too high to allow a business to operate profitably and were, therefore, unreasonable. By the same token, condemnor expected to indicate that the rental percentage computed by its expert witnesses would allow profitable operation and was, therefore, reasonable. There was no attempt by condemnor to show that the value of the property could be indicated

---

[1] In a situation where income is derived from the commercial use of property, the amount of profit from the business depends to such an overwhelming extent "upon the capital employed and the fortune, skill and good management with which the business is conducted, that it furnishes no test of value of the property." Sackman, Economic Approach to Valuation, 34 Appraisal Journal 511, 515 (1966), Utah Law Review (1966).

by the capitalized value of the profits of the theater business. All that condemnor wanted to prove was that the net rental value as testified to by condemnee's witnesses was not reasonable since it would have resulted in a loss to a lessee operating a business at that rental. Such questioning, whether on cross-examination or direct examination, is not prohibited by the Code. *Once a condemnee has introduced in evidence actual business figures in an attempt to establish a fair market value, he opens up to scrutiny the entire area of the actual business operation—including costs and expenses—in order to test the reasonableness of the condemnee's valuation.*

Condemnor further objects to two typewritten memoranda which the trial court permitted to be sent out with the jury over its objections: (1) showing the gross receipts of the property over the previous five-year period, which memorandum had been admitted in evidence as an exhibit; (2) setting forth a summary of the figures of fair market valuation of each witness, which memorandum had been prepared by the court but not admitted in evidence. The first memorandum should not have been admitted in evidence since it was highly prejudicial in that it emphasized to an extreme degree the large sum of gross receipts realized by condemnee from the operations of its property without any indication of the expenses incurred in the collection of that sum. Such a presentation of the economic status of the property, as we have already indicated, is not that contemplated by the Code. The second memorandum was, likewise, improperly submitted to the jury by the trial judge. As a general rule, the writing of memoranda by jurors is reversible error in Pennsylvania. *Thornton v. Weaber*, 380 Pa. 590, 112 A. 2d 344 (1955). Where, however, the notes are not taken into the jury room and no prejudice is shown, the mere taking of notes by a juror does not constitute grounds

for a new trial. *Fisher v. Strader*, 399 Pa. 222, 160 A. 2d 203 (1960). In *Thornton*, this Court stated that "in a particularly intricate case, one perhaps which involved many figures, some relaxation of the [prohibitory] rule might be allowed, although it would be advisable even here to have exhibits to cover the amounts or for both parties, with the approval of the judge, to agree to a stipulation to go out with the jury." 380 Pa. at 598, 112 A. 2d 348. We recognize that the preparation of memoranda by a trial court, with the assistance of counsel, is not as inherently objectionable as the unsupervised memoranda prepared by jurors for later reference. The same considerations will justify the practice of allowing memoranda prepared by counsel to be sent out with the jury during its deliberations. Accordingly, in *Armstrong & Latta v. City of Philadelphia*, 249 Pa. 39, 49, 94 Atl. 455, 459 (1915), this Court indicated that a memorandum sent out with the jury by the plaintiff setting forth correct calculations of the items of damage claimed is proper so long as the jury is instructed that the paper is not evidence but is merely to be used as an aid to its calculations. Here the submission of the memoranda prepared by the court to the jury was objected to by condemnor, so it is as though it were submitted by one party only. Since the court did not give the charge required by *Armstrong*, but instead instructed the jury that the paper "is only given to you for the purpose of giving you an accurate statement of the figures that were submitted here as evidence. These figures have been checked by counsel and they agreed that they are accurate. So, as to the figures themselves, you may rely on this memorandum which the Court proposes to send with you." Such an instruction gave the memorandum the force of evidence and was clearly erroneous.

Judgment reversed and new trial granted.

Mr. Justice ROBERTS dissents.