Commonwealth *v.* Canales, Appellant.

Submitted January 10, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Allan I. Steinberg, Neil Carver,* and *Carver and Steinberg,* for appellant.

*Linda West Conley, James T. Ranney,* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, November 26, 1973:

The appellant, Raymon Canales, was convicted on August 10, 1971, in a jury trial, of first-degree murder for the shooting of Tyrone Wroten on October 9, 1970. Post-trial motions were denied and the appellant was sentenced to a term of life imprisonment. This appeal followed in which we reverse the judgment of sentence.

Shortly after the appellant's arrest around 9:00 a.m., on October 14, 1970, and prior to approximately a half-hour of police questioning, he was informed of the nature of the charges against him and of his constitutional rights. Questioning resumed in a second interview some five hours later, and within minutes the appellant made an oral confession which began with the following statement: "Look man, I am going to give

you a statement from me to you only. I am not going to sign anything. I am not going to admit anything in the presence of anyone else, and it will be your word against mine." Two or three minutes after the appellant concluded his oral confession, the interrogating police officer left the room and made notes of the confession. The appellant was not asked to sign the notes. Prior to the trial, the appellant unsuccessfully sought to have his oral statement and the officer's notes suppressed.

Appellant first claims that he did not knowingly, intelligently, and voluntarily waive his constitutional privilege to remain silent. He argues that his expressed willingness to give an oral, but not a signed confession, should have alerted the police officer that the appellant was not knowingly and intelligently waiving his privilege against self-incrimination, about which the appellant had previously been informed. The officer, therefore, before listening to the oral confession, would have had a duty to make certain that the appellant understood that any confession, oral as well as signed, could be used against the appellant. Appellant cites *Frazier v. United States*, 419 F. 2d 1161 (D.C. Cir. 1969). In *Frazier*, the defendant had been advised of his constitutional rights and was in the process of giving an oral confession when he noticed that the detective was taking notes. The defendant objected saying *"Don't write anything down. I will tell you about this but I don't want you to write anything down."* *Id.* at 1168 (emphasis added). The detective ceased taking notes and the defendant continued his oral confession without receiving from the detective any *further* warning of the consequences of foregoing the privilege not to speak. *Frazier* concluded that the defendant's statement to the detective gave rise to a strong implication that the defendant thought "his confession could not be used against him so long as nothing was committed to writ-

ing." *Id.* That implication, in light of the prosecution's burden to show a knowing, intelligent, and voluntary waiver, was the basis for *Frazier's* suppression of the defendant's oral confession.

"Appellant's ban on note-taking inveighs against intelligent waiver, but this inference might be overcome, for example, if [the police] admonished him that even an oral confession would be used against him, and appellant replied that he knew that but still did not want anything written down." *Id.* at 1169.

Appellant's statement, in this case, however, is not the equivalent of the defendant's statement in *Frazier,* and does not give rise to the inference that the appellant was unaware of the consequences of foregoing his right to speak. Appellant began his oral confession by saying: "Look man, I am going to give you a statement from me to you only. I am not going to sign anything. I am not going to admit anything in the presence of anyone else, *and it will be your word against mine.*" (Emphasis added.) Unlike the statement in *Frazier,* the appellant's statement gives rise to an inference that he knew the consequences of an oral confession and expected to prevail in the credibility contest when the oral confession was used against him. We must conclude, therefore, that the trial court did not err in finding a knowing, intelligent, and voluntary waiver by the appellant of his constitutional privilege to remain silent.

Appellant's second claim of error requires a reversal of the judgment of sentence and the award of a new trial. During the trial, the police officer who heard the appellant's oral confession testified that shortly after he left the appellant he made notes concerning the oral confession. He produced these notes in court testifying that they were not verbatim notes and contained only the substance of the appellant's oral confession. He stated that he filled in the addresses of

certain individuals mentioned by the appellant in his oral confession. The officer stated that he did not ask the appellant to sign the notes because the appellant had already said he would not sign anything.

The police officer testified from present memory about the oral confession during the trial using the notes to refresh his recollection. The notes were marked as an exhibit, but no attempt was made to introduce them into evidence while the police officer was testifying. At the conclusion of the prosecution's case, however, the officer's notes about the appellant's oral confession were admitted into evidence as an exhibit over the objection of the defense counsel. Later, these notes, along with other exhibits, were sent out with the jury. We conclude that the admission of these notes as an exhibit was error and, therefore, it was also error to send them out with the jury.

We must examine two rules governing the use at trial of a witness's prior writing. One rule, known as past recollection recorded, permits a prior writing to be introduced into evidence. The other rule, known as present memory revived, does not permit the prior writing to be introduced into evidence, even though the witness may have used the writing as an aid in testifying.

In this case, the officer's notes did not qualify under the rule of past recollection recorded. Admissibility of a prior writing under that rule requires that the witness be unavailable or that the witness testify under oath that he has no present memory of the events recorded in the writing. In this case, the officer was available and was able to testify from present memory. His notes, therefore, could not properly be introduced into evidence under the rule of past recollection recorded.

The officer's notes in this case, however, were properly used as an aid to the witness under the rule of

present memory revived. That rule permits a witness to use a prior writing to refresh his present memory of past events. The witness, however, must testify from such present memory and not from the writing itself. Once the writing has refreshed the witness's present memory, it has served its purpose and may not thereafter be introduced into evidence. In commenting upon prior writings used to refresh the memory of a witness, Professor Wigmore has said that "[i]t follows from the nature of the purpose for which the paper is used that it is in no strict sense evidence" and that "the offering party has not the right to treat it as evidence, by reading it or showing it or handing it to the jury, is well established." 3 J. Wigmore, EVIDENCE §763 (Chadbourn rev. 1972). The reason such writings are not admissible into evidence is that they are only a repetition of the witness's testimonial utterances in the courtroom. Since the officer's notes were not admissible as past recollection recorded, but rather could be used only to refresh the witness's present memory, they should not have been admitted into evidence.

Since the officer's notes in this case should not have been admitted into evidence, they could not qualify as an exhibit. Compare *Commonwealth v. Moore*, 443 Pa. 364, 279 A. 2d 179 (1971). Only exhibits, under Rule 1114 of the Pennsylvania Rules of Criminal Procedure, may be given to the jury for use during its deliberations. The trial court's error in admitting the notes as an exhibit was compounded when the notes were sent out with the jury.

Moreover, Rule 1114, forbids the sending out of any portion of the trial transcript with the jury. Even before Rule 1114 was adopted, *Commonwealth v. Ware*, 137 Pa. 465, 479, 20 A. 806, 808 (1890), said that "[t]he sending out of a part of the testimony to the jury room is without precedent and [was] palpable error." The reason for the prohibition is that the presence in the

jury room of the physical embodiment of a portion of the trial testimony in written form may have the effect of increasing the probability that the jury will accept that testimony as credible. The officer's notes in this case were nothing more than his courtroom testimony reduced to writing—in effect, a transcript of his trial testimony.

We cannot consider the error in this case to be harmless. The police officer's trial testimony was critical to the prosecution. The appellant claimed that he had never made any oral statement to the police officer. The testimony of the appellant and the testimony of the police officer were directly contradictory. Without the appellant's oral confession, the evidence against the appellant was not sufficient to sustain a conviction. We cannot say that the issue of credibility between the appellant and the police officer was not affected by the physical embodiment of the officer's notes which were given to the jury to consider in their deliberation.

The prosecution also argues that relief should not be granted even if the officer's notes should not have gone out with the jury because defense counsel did not object when the various exhibits were given to the jury. We disagree and conclude that there was no waiver under the circumstances of this case. When the prosecution moved that the officer's notes which had been marked as an exhibit be admitted into evidence, defense counsel objected to their admission. The trial court, however, overruled defense counsel's objection and the notes were admitted into evidence *as an exhibit*. As noted earlier, Rule 1114 of the Pennsylvania Rules of Criminal Procedure permits *exhibits* to be given to the jury within the trial judge's discretion. Once defense counsel had objected to the introduction of these notes as an improper exhibit, he preserved his right to object to the use of these notes as part of the evidence. We cannot find a waiver in defense counsel's failure to re-

new his objection to the notes as part of the evidence when the exhibits were being given to the jury.

Judgment reversed and a new trial awarded.