363 A.2d 1326
**COMMONWEALTH of Pennsylvania**

v.

**Donald WILLIAMS, Appellant.**

Superior Court of Pennsylvania.
Sept. 27, 1976.

John W. Packel, Asst. Public Defender, Chief, Appeals Div., Philadelphia, for appellant.

Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is a direct appeal from a judgment of sentence entered by the Court of Common Pleas, Criminal Division, of Philadelphia County. Appellant was convicted of conspiracy in a non-jury trial. Post-verdict motions were timely filed and denied.

Appellant first contends that the court erred in admitting into evidence a statement he made while in police

custody, admitting his presence at the scene of the robbery that was the basis of the conspiracy charge.[1]

Appellant was taken into custody at 12:05 A.M on January 23, 1975. He was taken to the North Central Detective Division in Philadelphia, where an interview began at 1:33 A.M. The investigating officer read him his *Miranda*[2] rights, which appellant stated that he understood. He was asked, "Do you want to remain silent?" He answered, "No, I'll tell you what went down," and then proceeded to narrate his participation in a robbery. He was asked if he would make a signed statement. According to the officer "He indicated that he ain't signing nothing."

It is now urged, as it was in the court below, that appellant's unwillingness to sign anything indicates that his understanding of his rights was defective and that his waiver was thus invalid. We disagree.

In *Commonwealth v. Martin*, Pa., 348 A.2d 391 (1975), where the defendant agreed to give an oral statement, but refused to sign the "Miranda rights" waiver form, the Court stated:

"We do not doubt that in some situations a refusal of a person being questioned to sign a waiver form, even though followed by an apparent willingness to allow further questioning, can be indicative of confusion or ignorance such as to require the police to seek additional assurances of intelligence and understanding before proceeding further. [Citations omitted.] In other situations the absence of a written waiver has not been thought to vitiate oral statements. [Citations omitted.] The record here satisfies us that Martin was aware of his rights and voluntarily gave the oral statements now challenged."

1.  Appellant was acquitted of the robbery charge.
2.  *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■■ Thus an apparent equivocation on the part of a detainee during interrogation does not of itself preclude a finding of intelligent waiver of his *Miranda* rights, although it is a factor to be considered when determining the validity of the waiver. Appellant's refusal to sign anything does not conclusively vitiate the acceptability of his oral statement involving him in a crime. All the surrounding circumstances of the oral statement must be considered. If there is no fact established which would lead to a conclusion that the person making the oral statement was confused or misunderstood the consequences of the oral statement, then there is no reason to preclude the admission of the statement into evidence. Appellant was unequivocally advised that he could remain silent, and that anything he said could be used against him. He unequivocally responded that he understood his rights, and that he wished to make a statement. In the absence of any indication of confusion on his part, or any suggestion that his unwillingness to make a statement was a sudden change of mind, a conclusion that his unwillingness to sign anything reflected ignorance of the consequences of an oral statement with nothing more would be purely speculative. The defendant in this case, who was 18 years old at the time of his arrest, may have wished to provide an opportunity to deny later the oral statement in the event that it did not have the exculpatory effect that he obviously hoped for. See *Commonwealth v. Canales*, 454 Pa. 422, 311 A.2d 572 (1973). He may have doubted his ability to be certain of the contents of whatever he might be asked to sign, and may have felt that he might be tricked into authenticating with his signature a distorted version of his statement.[3]

---

**3.** The following exchange during the colloquy preceding the waiver of jury trial supports this conclusion:

Q.  Do you read and write?
A.  I read. It is not that good.
Q.  But you can read?
A.  I can read a little bit.

Under all the surrounding circumstances of this case, we find no error in the lower court's refusal to suppress the statement.[4] Two other arguments for suppression, neither having sufficient merit to discuss here, were made.

[4] Appellant also contends that the evidence was insufficient to support the verdict. We cannot agree. The pertinent part of the Crimes Code, 18 Pa.C.S.A., § 903, reads as follows:

"A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime. . . ."

Appellant's statement, read into the record from the notes of the investigating officer, informs us:

". . . . I was coming up from the projects when Tidy came up and asked if I wanted to make a sting. First he asked Face, he was with me, if he wanted to make a sting on the mailman, but Face said no, then he asked me and I said I would. I kept saying to Face 'come on, come on Face,' but Face said no. I saw the mailman walking on the corner of Arlington Street, and Tidy went down the street and there was another guy, I don't know him, standing by the alley. I thought I'd be slick and just lay back and Tidy and the other guy would take the mail, then I could make a few dollars without really doing the sting."

---

4. The views expressed by this writer in his dissent in *Commonwealth v. Cost*, —— Pa. ——, 362 A.2d 1027 (filed: March 29, 1976) are not inconsistent with those expressed herein. The refusal of the defendant in that case to sign a waiver form, combined with the coercive circumstances surrounding his interrogation, led, in my view, to the conclusion that his waiver was not knowingly, intelligently and voluntarily given. Instantly, appellant's generalized refusal to part with his signature, standing alone, is not a sufficient basis for a conclusion that he labored under a comparable misconception of his rights.

The statement goes on to describe the robbery and appellant's unsuccessful search for the robbers in order to get his share of the proceeds. The mailman's testimony as to the occurrence of the overt act necessary to prove the existence of a conspiracy, the robbery, was stipulated to at trial. Appellant's statement makes clear that he agreed with the actual robbers that the crime would be committed. His contention that he abandoned the conspiracy to act in this case lacks merit as his decision not to participate directly was not made "under circumstances manifesting a complete and voluntary renunciation of his criminal intent," in the words of § 903(f) of the Crimes Code, *supra,* providing for the defense of renunciation. His search for his co-conspirators in order to get his share of the proceeds belies any assertion of such a renunciation. We find his challenge to the sufficiency of the evidence devoid of merit and will therefore affirm.

Judgment of sentence affirmed.