369 A.2d 438
COMMONWEALTH of Pennsylvania
v.
William J. KELLY, Appellant.

Superior Court of Pennsylvania.

Argued June 22, 1976.

Decided Nov. 22, 1976.

352

354

Alfonso A. Tumini, Philadelphia, with him Anthony D. Pirillo, Jr., Philadelphia, for appellant.

E. Rendell, Philadelphia, with him Maryann D. Conway, Assistant Attorney General, and Walter M. Phillips, Jr., Deputy Attorney General, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

A jury trial in August 1975, resulted in the conviction of appellant on three counts of perjury,[1] one count of bribery,[2] and one count of obstructing the administration of the law.[3] Following the denial of post-trial motions, appellant was sentenced to a prison term of three to twenty-three months on the perjury counts. This appeal followed. We affirm.

Portions of the factual history of this case will be set forth in more detail in the course of the seriatum discussion of appellant's nine assignments of error upon which this appeal is based. Briefly, however, the facts are these: The ongoing Pennsylvania Crime Commission investigation of corruption in Philadelphia resulted in charges that appellant, a police officer, had received sums of money a number of times in 1973 from one Joseph Anthony Narcise, in exchange for which appellant would refrain from interfering with a gambling operation of which Narcise was a part. The obstruction

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 4902 (1973).

2. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 4701 (1973).

3. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 5101 (1973).

charge alleged that in September, 1973, appellant and Narcise became suspicious of an undercover agent, Andrew Marrese, who was posing as a gambler, and arranged to have the agent arrested and thus blow his cover. One of the perjury counts charged appellant with making false statements under oath before Municipal Court Judge Melton who then issued a search warrant which led to the arrest of the undercover agent. Appellant was also charged with two counts of perjury as a result of his testimony before the January, 1974, Special Investigating Grand Jury, wherein he reasserted the facts sworn to in the search warrant affidavit, and denied any prior dealings with Narcise.

Appellant's first contention is that he was denied the opportunity to effectively cross-examine certain prosecution witnesses, in that, following the witnesses' testimony on direct examination, the trial court refused to order the Commonwealth to turn over to appellant the *complete, unedited* transcripts of the prior testimony of these witnesses before the investigating grand jury. Instead, the trial judge reviewed the unedited transcripts and ordered that they be turned over to appellant, after deleting *only* those portions of the testimony which dealt with other investigations then being conducted, and which were completely unrelated to appellant. We believe that the course taken by the trial judge was proper.

In recent years, the veil of secrecy surrounding grand jury proceedings has been more easily parted when and where the interests of justice required. This is true in the case of an investigating grand jury as well as an indicting grand jury, and it is now settled that "[a]t trial, the accused, if he desires, will have the benefit of *relevant* portions of recorded testimony [before the investigating grand jury] for purposes of impeachment.

358

. . ." *Commonwealth v. Columbia Investment Corp.*, 457 Pa. 353, 369, 325 A.2d 289, 297 (1974) (citation omitted) (emphasis added).

Appellant complains that his counsel should have been permitted to determine which portions of the prosecution witnesses' prior testimony were relevant, not the trial judge, and cites *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), for the proposition that an in camera review by the trial judge of transcripts of the prosecution witnesses' testimony before the grand jury is not a desirable means of determining what parts of their testimony the accused is entitled to see. We would point out that the Court was referring in that instance, to an inspection to determine whether or not the witnesses' grand jury testimony was inconsistent with testimony given on direct examination at trial. In the case at bar, that task was in fact left to appellant's counsel, since the trial judge merely deleted statements of the witnesses concerning investigations unrelated to appellant, which were wholly collateral to appellant's trial, and in any event improper subjects for impeachment. While we have stated that when a timely request is made for a pre-trial statement of a Commonwealth witness, the judge has a duty to review that statement, and make available to the defendant the *relevant* portions of that statement, *Commonwealth v. Robinson*, 229 Pa.Super.Ct. 131, 324 A.2d 441, *allocatur refused*, 229 Pa.Super. *xxxv* (1974), this is indeed a far cry from saying that an accused is entitled to any and all prior statements a prosecution witness may have made, regardless of whether or not it involved the accused's case, or some unrelated case.

The prior statements with which we are here concerned were made before a special grand jury which was

investigating corruption in Philadelphia. This investigation was in process at the time of trial, and we believe that to have revealed testimony involving other investigations which were still being conducted would have jeopardized these investigations, and possibly could have endangered the lives of numerous undercover agents then at work in the Philadelphia area. While the trial judge recognized this obvious need for some secrecy, he also made certain that appellant was provided with transcripts of any prior statements made by prosecution witnesses insofar as they concerned appellant. Since such statements are the only ones to which any defendant is entitled, we fail to see how appellant was in any way hindered in conducting his defense.

Appellant's second assignment of error is that the trial judge improperly admitted certain hearsay evidence. This contention is without merit. Appellant objects to the testimony of Andrew Marrese, the undercover policeman, concerning a conversation Marrese had with the aforementioned gambler, Joseph Narcise, in which Narcise told Marrese about making payoffs to the police. (Printed Record at 374a). The trial judge admitted the testimony concerning that conversation as coming within the well-established co-conspirator exception to the hearsay rule, *Commonwealth v. Holloway*, 429 Pa. 344, 240 A.2d 532 (1968), on the basis that appellant and Narcise had conspired together to facilitate the gambling operation and obstruct the investigation into that operation.

▮▮ The admissions of a co-conspirator may come into evidence as an exception to the hearsay rule even though the co-conspirator is not on trial and even if no party is formally charged with conspiracy. *Commonwealth v. Garrison*, 398 Pa. 47, 157 A.2d 75 (1959). Of course, a conspiracy must first be proved prior to invok-

ing the hearsay exception, but the standard by which the conspiracy must be shown is a fair preponderance of the evidence, rather than beyond a reasonable doubt. In addition, the judge, not the jury, determines whether or not proof of a conspiracy is strong enough to trigger the hearsay exception. *Commonwealth v. Hirsch,* 225 Pa.Super. 494, 311 A.2d 679 (1973).

■ The testimony of Joseph Narcise, prior to Marrese's testimony, was more than sufficient, if believed, to prove to the trial judge that appellant and Narcise had conspired together, and that the conspiracy was ongoing at the time Narcise made the statements to the undercover agent, Marrese. Thus, the testimony came within a recognized exception to the hearsay rule and was properly admitted.

■ ■ The third argument raised by appellant is that, in regards to the arrest of Andrew Marrese, the alleged purpose of which was to blow Marrese's cover, appellant was charged under the wrong section of the Crimes Code, in that he was charged with obstructing' the administration of the law,[4] whereas he argues that he should have been charged with official oppression.[5] Al-

4. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 5101 (1973), provides:

"A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions."

5. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 5301 (1973), provides:

"A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity com-

though it appears that appellant waived this issue by failing to raise it in pretrial applications, Pa.R.Crim.P. 304(e), it is in any event without merit. While the arrest of the undercover agent, Marrese, would certainly be included in the crime of official oppression, the arrest was allegedly merely a means to an end, that being the hindrance of the investigation into the gambling operation. Therefore, we believe that the crime of obstruction of the administration of the law more completely and accurately covers the prohibited conduct with which appellant was charged.

Appellant raises as a fourth assignment of error the admission over objection, of certain portions of his testimony before the grand jury during the course of which he had allegedly perjured himself, on the basis that the testimony was coerced and therefore inadmissible. As an employee of the city of Philadelphia, appellant was subject to a provision in the Home Rule Charter which requires city employees to cooperate in official investigations under the threat of losing their jobs if they failed to do so. It is clear that statements made under threat of being discharged are the products of coercion and are therefore inadmissible at trial. *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975).

However, the presiding judge at the grand jury proceedings *never gave* the Home Rule Charter warnings to appellant. Instead, appellant, along with a number of other witnesses, was advised of his right against self incrimination, and told that, if the need arose, and an em-

mits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:

"(1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or

"(2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity."

ployee of Philadelphia claimed this constitutional privilege, the judge would give them additional instructions, but he would not do so *unless the privilege was claimed.* We fail to see how appellant was coerced inasmuch as the Charter warnings were never given.

While appellant may contend that the very existence of the provisions in the Home Rule Charter had the effect of coercing his testimony, this argument must be rejected since appellant did in fact claim the privilege against self incrimination in response to two separate questions posted in the grand jury proceedings. Despite these claims of privilege, the Home Rule Charter warnings were never given to appellant, thus we believe that his testimony was voluntarily given, not the product of coercion, and therefore properly admitted as evidence in his perjury trial. The United States Supreme Court in *United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976), held that even if a party should not have been compelled to testify before a grand jury, if that party did in fact testify, and did so falsely, the compelled testimony would not be suppressed in a subsequent *perjury trial,* even if it would have been suppressed in a trial for the crimes with which the testimony was concerned. Since we find that appellant's testimony was not a product of coercion, we find it unnecessary to decide whether or not *United States v. Mandujano,* supra, is the law in this Commonwealth.

■■ Appellant raises as a fifth assignment of error the admission of a police property receipt and two police reports. Appellant asserts that these items were not properly qualified as business records.[6] We cannot

6. Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b (1958), provides:
   "A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation,

agree. Contrary to the argument of appellant, a witness called for the purpose of qualifying a business record need not have any personal knowledge of the facts which are reported in the particular records. In the case at bar, the qualifying witness, a Lt. Cole, testified that the complained of records were (1) prepared in the regular course of police business, (2) at or near the time of the reported incident, and (3) that although he didn't remember the particular incident with which the reports were concerned, his signature as reviewing officer was on the report. (Printed Record at 262a–264a). We conclude that these reports were properly qualified as business records.

The sixth contention made by appellant in this appeal is in regards to the trial court's charge to the jury, which appellant contends was one-sided and prejudicial. We do not agree.

■■ ■■ In determining whether or not a jury charge contained a fair summary of the evidence and adequate instructions on the law, the charge must be reviewed in its entirety, rather than exclusive reference to isolated parts thereof. *See e. g., Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Porter*, 449 Pa. 153, 295 A.2d 311 (1972). After reviewing the jury charge in this light, we see no basis for reversal on this point. The trial of this case took seven days, with numerous witnesses, and to either require or expect the trial judge, in his charge to the jury, to touch on every single bit of testimony given in the course of trial is clearly an unrealistic and undesirable position We conclude that the jury charge, in addition to being a fair summary of the testimony, also contained an adequate explanation of the applicable law, and consequently did not prejudice appellant.

and if it was made in the regular course of business at or near the time of the act, condition or event, and if in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

Appellant, citing Pa.R.Crim.P. 1114,[7] also contends that he was prejudiced by the form of the verdict slip [8]

7. Pa.R.Crim.P. 1114 provides as follows:
"Upon retiring for deliberations, the jury shall not be permitted to have a transcript of any trial testimony, nor a copy of any written confession by the defendant, nor a copy of the information or indictment. Otherwise, upon retiring, the jury may take with it such exhibits as the trial judge deems proper."

8. The verdict slip given to the jury was in the following form.

| " | Defendant | Indictment | Count | Verdict |
|---|---|---|---|---|

"#2381 . . OBSTRUCTING ADMINISTRATION OF LAW OR OTHER GOVERNMENTAL FUNCTION
SEPTEMBER 27, 1973
ARREST OF ANDY MARINO (SGT. ANDREW MORRESE) CHIPPY'S BAR

"GUILTY
"NOT GUILTY
"#2382 . . PERJURY:

"FIRST COUNT:

"TESTIMONY OF DEFENDANT BEFORE SPECIAL INVESTIGATING GRAND JURY ON DECEMBER 20, 1974 REGARDING TRUTH OF STATEMENT IN OATH BEFORE JUDGE MELTON TO SECURE WARRANT:

"GUILTY
"NOT GUILTY

"SECOND COUNT:

"TESTIMONY OF DEFENDANT BEFORE SPECIAL INVESTIGATING GRAND JURY ON DECEMBER 20, 1974 REGARDING SPEAKING TO NARCISE PRIOR TO RAID ON SEPTEMBER 27, 1973:

"GUILTY
"NOT GUILTY
"#2383 . . PERJURY:

"OATH OF DEFENDANT BEFORE JUDGE MELTON ON SEPTEMBER 27, 1973 THAT HE DID CONDUCT A SURVEILLANCE OF CHIPPY'S BAR ON SEPTEMBER 25, 1973 BETWEEN THE HOURS OF 12:15 P.M. and 1:00 P.M.

"GUILTY
"NOT GUILTY
"#2384 . . BRIBERY IN OFFICIAL AND POLITICAL MATTERS:
"FIRST COUNT

"RECEIPT OF $20.00 FROM NARCISE ON OR ABOUT July 30, 1973.

"GUILTY
"NOT GUILTY

"SECOND COUNT

"RECEIPT OF $20.00 FROM NARCISE ON OR ABOUT SEPT. 7, 1973.

which the trial judge had prepared and sent out with the jury, upon which there was a brief sentence describing the factual situation out of which each count against appellant arose. While we do not wish to encourage the practice in future cases, we believe that under the particular circumstances of this case, the verdict slip in question did not result in prejudice to appellant.

Appellant argues that Pa.R.Crim.P. 1114 is dispositive of this issue. While we agree that an analysis of the purpose of Rule 1114 is helpful in reaching a decision, Rule 1114 is not controlling, since the verdict slip is neither in the prohibited class of items under Rule 1114, i. e., a "written confession . . . transcript of trial testimony," or an "indictment or information," nor in the permitted class of items, i. e. an "exhibit." The generally accepted rationale for limiting the written materials which can go out with the jury is to make certain that the jury does not give undue weight to the written materials at the expense of other evidence produced at trial which is not in written form. *See Commonwealth v. Baker*, 466 Pa. 382, 353 A.2d 406 (1976); *Commonwealth v. Canales*, 454 Pa. 422, 311 A.2d 572 (1973). Thus it is felt that sending a copy of the indictment out with the jury, as was the practice in Pennsylvania prior to Rule 1114, would tend to overemphasize the Commonwealth's evidence, since the indictment necessarily contains numerous specific factual allegations. We in no

| "        | Defendant | Indictment | Count | Verdict |
|----------|-----------|------------|-------|---------|

"GUILTY
"NOT GUILTY

"THIRD COUNT

"RECEIPT OF $20.00 FROM NARCISE ON OR ABOUT SEPT. 18, 1973.

"GUILTY
"NOT GUILTY

"FOURTH COUNT

"RECEIPT OF $50.00 FROM NARCISE ON OR ABOUT OCT. 3, 1973.

"GUILTY
"NOT GUILTY."

way quarrel with the wisdom of this view, rather, we simply do not agree with appellant's argument that the verdict slip was "tantamount to allowing the bills of indictment and the transcript of testimony to go out with the jury. . . ." (Appellant's Brief at 21).

In this case, which took seven days to try, and in which there was voluminous testimony regarding the various charges, the trial judge felt it necessary to give the jury some reference point for each of the charges against appellant. This is understandable in light of the fact that appellant, in addition to the obstruction charge, was charged with three counts of perjury and four' counts of bribery. If the jury had no means of determining which count referred to what circumstances concerning which they had heard testimony, confusion would likely ensue. It is our view that to avoid such confusion would be in the interests of the criminally accused as well as the Commonwealth.

Thus, the trial judge undertook to prevent this confusion by attempting to prepare a neutral reference to the events which would enable the jury to distinguish the various counts. We believe that he succeeded in doing so on the charge of obstruction and on the three counts of perjury. While we believe that the brief factual statements under the four counts of bribery were not so clearly neutral, for reasons discussed *infra* we do not believe appellant was thereby prejudiced.

On the verdict slip, under the charge of obstruction, there is a simple reference to "the arrest of Andy Marino (Sgt. Andrew Marrese) Chippy's Bar." This fact is not disputed. It is a matter of record that "Andy Marino" was arrested. Unlike an indictment, this one line reference does not charge appellant with wrongdoing. It does not overemphasize or reinforce the Commonwealth's evidence, because it refers to a fact which is undisputed. The Commonwealth's case is concerned with establishing some wrongdoing by appellant with regards to this arrest, not with whether or not the arrest occurred, which

is all the verdict slip stated, and which is a matter of record.

The situation is very similar in the case of the three counts of perjury. Under each count is a short reference to an event which is an undisputed matter of record, placed there solely to aid the jury in determining which count referred to which occurrence. The references are merely to places and dates at which time appellant made certain statements. These references do not charge appellant with committing perjury, or emphasize the Commonwealth's case, as would an indictment. It is not an issue whether or not appellant testified before the grand jury on December 20, 1974, or that he swore out an affidavit before Judge Melton on September 27, 1973. The issue is whether or not he falsely testified or falsely swore, and to these matters the short statements on the verdict slip do not address themselves. Unlike the items prohibited by Rule 1114, these short statements did not buttress the Commonwealth's case, or emphasize one area of testimony at the expense of another; thus appellant cannot be said to have been prejudiced by their presence on the verdict slip.

Appellant was also charged on four counts of bribery. Under each count is a one line reference to the event out of which the particular charge arose. Unlike the descriptions under the charges of obstruction and perjury, whether or not appellant received money from the gambler Narcise, either as pay-offs or otherwise, is a disputed issue. However, these simple statements are certainly less prejudicial than sending out the entire indictment, and at worst could be considered no more prejudicial than the special interrogatories sent out with the jury in *Commonwealth v. Baker,* supra. In that case, while expressing some misgivings about the possibility of the diversion of the jury's attention from the trial court's instructions as a whole, the Court recognized the desirability of giving the jury certain limited, written guidelines, when the case is very complex.

In the case at bar, the trial judge, in his discretion, believed that to submit a verdict slip simply listing four counts of bribery, without any indication of which count involved which alleged transactions, would be highly confusing to the jury. While we realize it is very difficult to give such guidance to the jury without giving undue weight to certain portions of the case, and thus do not encourage the practice, we at the same time do not feel that the action warrants a new trial. In addition to the fact that the brief descriptions under the bribery counts are clearly less prejudicial than sending the indictment out with the jury, we believe that the acquittal of appellant on three of the four bribery counts is a strong indication that the jury in fact did not give undue weight to the descriptions, and thus their inclusion on the verdict slip was not prejudicial to appellant.

Although a strict reading of Rule 1114 might prohibit sending out any verdict slip with the jury, we do not believe that was the intention of the rule and we have analyzed the effect of submitting this slip to the jury in light of protecting the same interests which Rule 1114 specifically seeks to protect. It is our conclusion that these interests have not been violated and that appellant was not prejudiced by the submission of the verdict slip as it appears before us. Inasmuch as less carefully prepared statements than those on this particular verdict slip may indeed result in prejudice, we would advise caution in further use of similar slips. We do not believe that a reversal is warranted under the particular circumstances of this case, however.

For his eighth assignment of error, appellant makes the general allegation that the trial judge conducted the trial in an unfair and prejudicial manner, and suggests that the trial judge was an advocate of the Commonwealth's case. A review of the record clearly indicates that these charges are without merit, and that the trial was in fact fairly and impartially conducted.

■■■■■■   The ninth and final argument made by appellant is that the trial judge erred in refusing to sustain appellant's demurrer to the Commonwealth's case, and similarly erred in refusing to grant appellant's motion in arrest of judgment or for a new trial. In order for the trial judge to properly overrule a demurrer following the close of the prosecution's case, the Commonwealth's evidence, together with all reasonable inferences therefrom, must be sufficient to support a jury finding of guilt beyond a reasonable doubt. *Commonwealth v. Carroll*, 443 Pa. 518, 278 A.2d 898 (1971); *Commonwealth v. Mason*, 211 Pa.Super. 328, 236 A.2d 548 (1967). It is likewise well-established that in reviewing the denial of motions in arrest of judgment and for new trial the evidence will be considered in a light most favorable to the Commonwealth together with all reasonable inferences from that evidence. *Commonwealth v. Rothman*, 226 Pa.Super. 319, 310 A.2d 353 (1973).

■■■■■   The Commonwealth's case consisted of testimony which, if believed by the jury, was more than sufficient to prove that appellant arranged the arrest of Andrew Marrese in order to blow Marrese's cover, that appellant falsely swore out an affidavit before Judge Melton, that appellant perjured himself before the investigating grand jury, and that appellant had been accepting bribes from the gambler Narcise. Thus, the trial judge acted properly in refusing to sustain appellant's demurrer and denying the motions in arrest of judgment and for a new trial.

Judgment of sentence affirmed.

HOFFMAN, J., files a dissenting opinion in which CERCONE, J., joins.

HOFFMAN, Judge, dissenting:

The appellant, a Philadelphia police officer, was found guilty of one count of obstructing the administration of

the law,[1] three counts of perjury,[2] and one count of bribery.[3] He raises nine allegations of error. Although I find no merit to eight of those claims, I believe that the lower court erred in including factual allegations printed on the verdict slip. Therefore, I would reverse.

The factual history may be summarized briefly: During the ongoing Pennsylvania Crime Commission investigation of corruption in Philadelphia, an undercover state policeman observed appellant accept a $20.00 pay-off from a gambler in a West Philadelphia taproom. The pay-off was made so that the officer would not interfere with the gambling operation.

Several months later, in September, 1973, appellant and the gambler became suspicious that another undercover agent, who was posing as a gambler, was, in fact, not a gambler. In order to test their suspicions, the appellant swore to a false affidavit in order to obtain a search warrant. The subsequent arrest forced the agent to give up his undercover work.

On December 20, 1974, appellant appeared before an investigating grand jury. When questioned about the warrant, he reaffirmed the truth of the facts which he had alleged in the affidavit. He also testified that he had not spoken to the West Philadelphia gambler about obtaining the warrant.

Appellant was subsequently indicted on one count of obstructing the administration of the law, three counts of perjury, and four counts of bribery. On August 12, 1975, after a seven day trial, a jury found appellant guilty of the charge of obstruction, the three counts of perjury and one count of bribery. The lower court denied post-trial motions on January 26, 1976. Thereafter, he was sentenced to concurrent terms of three to twenty-three months on the perjury convictions.

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 5101.
2. The Crimes Code, supra; 18 Pa.C.S. § 4902.
3. The Crimes Code, supra; 18 Pa.C.S. § 4701.

Prior to commencement of jury deliberations, the lower court prepared the following verdict slip:

| Defendant | Indictment | Count | Verdict |
|---|---|---|---|

#2381 .. OBSTRUCTING ADMINISTRATION OF LAW OR OTHER GOVERNMENTAL FUNCTIONS SEPTEMBER 27, 1973 ARREST OF ANDY MARINO (SGT. ANDREW MORRESE) CHIPPY'S BAR

GUILTY

NOT GUILTY

#2382 .. PERJURY:

### FIRST COUNT

TESTIMONY OF DEFENDANT BEFORE SPECIAL INVESTIGATING GRAND JURY ON DECEMBER 20, 1974 REGARDING TRUTH OF STATEMENT IN OATH BEFORE JUDGE MELTON TO SECURE WARRANT:

GUILTY

NOT GUILTY

### SECOND COUNT

TESTIMONY OF DEFENDANT BEFORE SPECIAL INVESTIGATING GRAND JURY ON DECEMBER 20, 1974 REGARDING SPEAKING TO NARCISE PRIOR TO RAID ON SEPTEMBER 27, 1973:

GUILTY

NOT GUILTY

#2383 .. PERJURY:

OATH OF DEFENDANT BEFORE JUDGE MELTON ON SEPTEMBER 27, 1973 THAT HE DID CONDUCT A SURVEILLANCE OF CHIPPY'S BAR ON SEPTEMBER 25, 1973 BETWEEN THE HOURS OF 12:15 P.M. and 1:00 P.M.

GUILTY

NOT GUILTY

#2384 .. BRIBERY IN OFFICIAL AND POLITICAL MATTERS:

### FIRST COUNT

RECEIPT OF $20.00 FROM NARCISE ON OR ABOUT JULY 30, 1973.

GUILTY

NOT GUILTY

### SECOND COUNT

RECEIPT OF $20.00 FROM NARCISE ON OR ABOUT SEPT. 7, 1973.

GUILTY

NOT GUILTY

| Defendant | Indictment | Count | Verdict |
| --- | --- | --- | --- |

THIRD COUNT

RECEIPT OF $20.00 FROM NARCISE ON OR ABOUT SEPT. 18, 1973.

GUILTY

NOT GUILTY

FOURTH COUNT

RECEIPT OF $50.00 FROM NARCISE ON OR ABOUT OCT. 3, 1973.

GUILTY

NOT GUILTY

When the court showed the verdict slip to counsel, appellant's attorney stated that ". . . I would object to the verdict report prepared in the instant matter, that in each of the indictments the counts have been set forth with a brief fact situation. For example, 8/23/73, it refers to the September 27 arrest of Sergeant Andrew Marrese. 'Obstruction Administration of Law or Other Governmental Functions. September 27, 1973. Arrest of Andy Marino (Sgt. Andrew Marrese) in Chippy's Bar.' It goes on and sets forth some item of fact from the various counts. I would imagine this is prejudice, to the defendant because of the fact that it presents undue emphasis to the contention of the Commonwealth. It has never been the practice to send the jury sheet out with anything but the Bill of Indictment number plus the bold face type charge that he is charged with. For those reasons, I would object."

Appellant raises the same issue herein. Initially, Rule 1114, Pa.R.Crim.P., is clear that "[u]pon retiring to deliberations, the jury shall not be permitted to have a transcript of any trial testimony, nor a copy of any written confession by the defendant, nor a copy of the information and indictment. Otherwise, upon retiring, the jury may take with it such exhibits as the trial judge deems proper." As appellant points out, this verdict slip cannot be considered an exhibit in the case that the jury

could properly have taken from the courtroom for purposes of deliberation.

The Comment to Rule 1114 provides, in part, that "[t]his Rule substantially changes the former law in many Pennsylvania counties by prohibiting the jury from receiving a copy of the indictment (or information) during its deliberations, see *Commonwealth v. Schwartz*, 178 Pa.Super. 434, 115 A.2d 826 (1955). . . ." The appellant suggests that the limited recitation of the facts was "tantamount to allowing the bills of indictment and the transcript of testimony to go out with the jury. . . ."

The court's brief description of each count does not clearly fit into either category, on the one hand, the class of items that cannot be considered by the jury, or on the other, an exhibit which can. It is clear that under Rule 1114, the court has no discretion to allow the transcript or the indictment to go with the jury during the deliberations. See *Commonwealth v. Moore*, 443 Pa. 364, 279 A.2d 179 (1971). Thus, it is necessary to analyze the purpose of Rule 1114 to decide the propriety of the court's action.

In *Commonwealth v. Canales*, 454 Pa. 422, 311 A.2d 572 (1973), the lower court permitted notes prepared by a police officer contemporaneously with the appellant's oral confession, to go to the jury. The Court stated that "[s]ince the officer's notes in this case should not have been admitted into evidence, they could not qualify as an exhibit. . . . Only exhibits, under Rule 1114 of the Pennsylvania Rules of Criminal Procedure, may be given to the jury for use during its deliberations. The trial court's error in admitting the notes as an exhibit was compounded when the notes were sent out with the jury.

"Moreover, Rule 1114, forbids the sending out of any portion of the trial transcript with the jury. Even before Rule 1114 was adopted, *Commonwealth v. Ware*, 137 Pa. 465, 479, 20 A. 806, 808 (1890), said that '[t]he

sending out of a part of the testimony to the jury room is without precedent and [was] palpable error.' *The reason for the prohibition is that the presence in the jury room of the physical embodiment of a portion of the trial testimony in written form may have the effect of increasing the probability that the jury will accept that testimony as credible.*" 454 Pa. at 427–28, 311 A.2d at 575. (Emphasis added). The long-standing accepted procedure in Pennsylvania is to allow the lower court to have portions of testimony read to the jury if the jury makes a specific request. *Commonwealth v. Ware*, supra; *Cunningham v. Patton*, 6 Pa. 355 (1847) ; *Commonwealth v. Fontaine*, 183 Pa.Super. 45, 128 A.2d 131 (1956).

The problem is analogous to the question of permitting note-taking by jurors. Although Pennsylvania is in the minority of jurisdictions which condemns the practice, Annot. 14 A.L.R.3d 831, there are sound reasons underlying the rule: ". . . by taking notes a juror emphasizes to himself and perhaps later to other jurors one feature of the case over other equally important features and thus a resulting distorted view may be gained of the whole picture which is before the jury for deliberation." *Id.* at 838. See *Thornton v. Weaber*, 380 Pa. 590, 112 A. 2d 344 (1955). The Supreme Court has held further that the same considerations apply if the court or counsel prepare a memorandum to accompany the jury. *Lancaster Redevelopment Authority Appeal*, 425 Pa. 36, 227 A. 2d 827 (1967).

Finally, in *Commonwealth v. Baker*, 466 Pa. 382, 353 A.2d 406 (1976), the appellant contended that the lower court erred in sending out special interrogatories with the jury. Although the Supreme Court affirmed,[4] it dis-

---

4.  Justice Nix wrote the lead opinion; however, only Chief Justice Jones joined in that opinion. Justices Eagen and O'Brien concurred in the result; Justices Roberts and Pomeroy filed dissenting opinions; Justice Manderino noted his dissent.

approved of such practices: ". . . we believe the inherent dangers outweigh the possible benefit to be derived therefrom. Accordingly, we hold that while there was no abuse of discretion by the trial court in the instant case, we suggest in the future that this practice should not be followed." 466 Pa. at 397–398, 353 A.2d at 414.[5] In a vigorous dissent, Justice Roberts pointed out the infirmity inherent in such a practice: "The court's procedure in this case could only encourage the jury to ignore the court's general instructions and to reach a verdict without a complete analysis of the issues involved. . . . Moreover, the jury might have also structured its entire deliberation solely around answering these questions, thus short-circuiting full consideration of all the evidence and the general instructions. These dangers jeopardized defendant's right to a fair trial." 466 Pa. at 402, 353 A.2d at 416.

None of the above cited cases is directly on point. Several points, however, are relevant: Rule 1114 does not permit the court to summarize the various charges. Counsel for appellant did not acquiesce in the court's summaries on the verdict slips. The summaries paired the various counts with the *Commonwealth's evidence*, introduced to prove the specific charges; thus the jury's attention was potentially diverted from all of the facts presented at trial, and focused on the Commonwealth's case. I conclude that prejudice inheres in such a practice.

Therefore, I would reverse and remand for a new trial.

CERCONE, J., joins in this dissenting opinion.

5.   See *Copeland v. United States,* 80 U.S.App.D.C. 308, 152 F.2d 769 (1945), cert. denied, 328 U.S. 841, 66 S.Ct. 1010, 90 L.Ed. 1815.