Deer Creek Drainage Basin Authority, Appellant
v. Pacoma, Inc., Appellee.

Argued November 15, 1984, before Judges ROGERS, MACPHAIL and PALLADINO, sitting as a panel of three.

*David E. Johnson,* with him, *Louis M. Tarasi, Jr., Tarasi & Tighe, P.C.,* for appellant.

*Leonard M. Mendelson, Hollinshead & Mendelson,* for appellee.

OPINION BY JUDGE ROGERS, February 12, 1985:

The Deer Creek Drainage Basin Authority (the Authority) appeals from a judgment entered in the Court of Common Pleas of Allegheny County in an eminent domain action between it and a landowner named Pacoma, Inc.

In December, 1977, the Authority condemned a sewer right-of-way over Pacoma's public golf course. A board of viewers awarded Pacoma damages in the amount of $15,000. On appeal to the Allegheny County Court of Common Pleas, a jury returned a verdict for Pacoma in the amount of $45,545. The Authority's motion for a new trial was denied.

We will not disturb a trial court's refusal of a new trial unless that action was a manifest abuse of discretion or was founded upon a clear error of law. *Gallo v. Redevelopment Authority of the City of Sharon,* 19 Pa. Commonwealth Ct. 71, 339 A.2d 165 (1975).

At the trial of the case in common pleas, Pacoma's president testified that the noise and dust generated by the construction of the sewer line, the removal of trees, and the placement of manholes within the playing area caused a loss of patronage at its golf course. He testified that he had no record of the numbers of patrons. He was permitted to testify from Pacoma's

ledgers as to the amount of Pacoma's gross receipts from patrons in years before, during and after the construction. These showed a diminution of gross receipts in the total amount of $65,000 in the relevant after-condemnation seasons of 1978-1979 and 1979-1980. The testimony was offered only as proof of the claimed loss of patronage due to the installation and presence of the sewer and it was admitted only for that purpose. The Authority's objections to this evidence at the trial were that the testimony was not the best evidence, that the ledgers were, and that the evidence was irrelevant and conjectural.

The Authority correctly argues that loss of business is a factor to be considered in determining the depreciation of the market value of a property. Section 602 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-602, provides that just compensation shall consist of the difference between the fair market value of the condemnee's property interest before the condemnation and as unaffected thereby and the fair market value of his property remaining immediately after such condemnation and as affected thereby. Section 705(1), 26 P.S. §1-705(1) permits the statement of evidence of all facts and data touching on value. Indeed, the Authority does not contend that loss of business may not be shown to be a result of condemnation adversely affecting after value. It contends that loss of business may not be illustrated by dollar amounts of gross receipts, citing *Lancaster Redevelopment Authority Appeal,* 425 Pa. 36, 227 A.2d 827 (1967), and *Sgarlat Estate,* 398 Pa. 406, 158 A.2d 541 (1960). It seems to contend that permitting the jury to hear the dollar amounts of gross receipts invite it to award those amounts to the condemnee as items of damages. But *Lancaster Redevelopment Ap-*

*peal* and *Sgarlat Estate* are quite different from the case at hand.

In *Lancaster Redevelopment Authority Appeal,* the condemnees introduced or attempted to introduce as evidence of the value of its theater before condemnation its rental value as a percentage of the gross receipts from the sale of tickets to performances. The Supreme Court held that evidence of gross receipts without indication of expenses to be incurred in their collection was inadmissible as evidence of the value of a condemned theater. In this case the gross receipts were not offered to show the value of the property either before condemnation or after condemnation. They were offered only for the purpose of establishing that the condemnation had caused a loss of patronage and a consequent diminution of market value after condemnation.

In *Sgarlat Estate,* the landowner attempted to establish the before value of its property underlain with sand and gravel by assigning no value to the land as it stood but assigning a separate value of the sand and gravel if extracted and sold. The Supreme Court held that although the fact that the land contained sand and gravel was a factor which could be considered in determining the value of the land, the dollar value of the sand and gravel if extracted was inadmissible because the owner's skills in the business of quarrying were not the subject of the condemnation and because the anticipated profits of a business, being speculative, are not recoverable as damages in condemnation. Here, we repeat, the gross receipts of the condemnee's golf course were not introduced to establish the value of the land but to show that its after value was adversely affected by the loss of patronage; nor here were the loss of gross receipts sought as an item of damages.

In any event, the instructions of the trial court judge were clearly to the effect that the losses in gross receipts were not sought as an item of damages and were not to be awarded. The judge charged:

Now, evidence of the other factors to be considered are things like the amount of land, the topography, location, utilities. Evidence of the loss of income from a decline in the patronage of the Plaintiff's golf course during the construction of the sewers may be considered by you as a factor in determining the fair market value of Plaintiff's property as affected by the condemnation. The Plaintiff is not entitled to recover the loss of income arising from the decline in patronage of the golf couse [sic] during and following the construction period as a separate and independent item of damage, but the amount of that loss may be considered by you together with all other factors in determining the damages which the Plaintiff has sufffered.

If you find that the Plaintiff sustained a loss of income from the operation of the golf course as a direct and necessary result of the installation of the sewers, you may consider that factor together with all other factors in determining the fair market value of the property as affected by the condemnation. You have heard these factors considered by the witnesses, and it will be up to you to evaluate them as to how they affect the valuation of the property.

Also, as we wrote in *Redevelopment Authority of the City of Philadelphia v. Cohen,* 31 Pa. Commonwealth Ct. 173, 181, 375 A.2d 881, 885 (1977), "error which produces no injustice does not compel the grant of a new trial." *See also Gallo v. Redevelopment Authority of the City of Sharon,* 19 Pa. Commonwealth

Ct. 71, 339 A.2d 165 (1975). The condemnee's expert witness, without reference to specific business losses, testified that the difference between the market value of the property before and after condemnation was $75,000. The Authority's expert witness testified that the difference was only $10,000. Surely it cannot be said that the jury's award, $20,000 less than the diminution in the gross receipts, demonstrates that the jury misapprehended the purpose of the evidence and the judge's charge.

Discerning no manifest abuse of discretion or clear error of law in the proceedings, we affirm the judgment.

ORDER

AND Now, this 12th day of February, 1985, the judgment entered in the Court of Common Pleas of Allegheny County appealed from is affirmed.

This decision was reached prior to the resignation of Judge WILLIAMS, JR.