528 A.2d 287

Redevelopment Authority of the County of Washington, Appellant *v.* Joseph R. Sepesy and Diane L. Sepesy, his wife, and Robert P. Sepesy and Loretta J. Sepesy, his wife, Appellees.

Argued May 18, 1987, before Judges CRAIG and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Frank A. Conte,* for appellant.

*Frank C. Carroll, Frank C. Carroll, P.C.,* for appellee.

OPINION BY SENIOR JUDGE KALISH, July 2, 1987:

The Redevelopment Authority of the County of Washington (condemnor) appeals from a decision of the Court of Common Pleas of Washington County which

denied its motion for post-trial relief and entered judgment in favor of Joseph R. Sepesy, Diane L. Sepesy, Robert P. Sepesy and Loretta J. Sepesy (condemnees). We affirm.

Condemnees owned a parcel of land in the Borough of California, Washington County. A restaurant with a liquor license was operated on the land. The property was condemned by condemnor on October 18, 1982. A Board of View awarded damages to condemnees in the amount of $52,900. Condemnees filed an appeal from the award.

Prior to trial, condemnor paid to condemnees $40,800 as its estimate of just compensation for general damages. In addition, condemnor paid condemnees $10,000 for business dislocation damages, and $17,465 for direct loss of personal property, *i.e.*, the machinery, equipment, and fixtures.

At the time of trial, the building on the property had been demolished, and the liquor license was held by the Liquor Control Board for safekeeping. The jury returned a verdict for damages to condemnees in the amount of $110,000. Condemnor filed a motion for post-trial relief which was denied.

Condemnor contends that this case raises the question of the applicability of the Assembled Economic Unit Doctrine to the facts of this case, specifically in reference to the damages to be paid for the real estate and the liquor license only, where the bulk of the personal property, including the liquor license, is movable. Condemnor asserts that the Assembled Economic Unit Doctrine may not apply to valuation of a restaurant and liquor license, and that the trial court erred in its charge to the jury in connection with the standard to be used in determining the value of the real estate where the building was a restaurant-tavern with a liquor-dispensing license.

Our scope of review is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Pidstawski v. South Whitehall Township,* 33 Pa. Commonwealth Ct. 162, 380 A.2d 1322 (1977).

The just compensation to which condemnees are entitled, pursuant to section 601 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-601, as applied to real estate, is the fair market value of condemnees' entire interest. Fair market value is defined as the price which would be agreed upon by a willing buyer and seller, including such factors as the *use of the property, machinery, equipment, and fixtures forming part of the real estate.* Section 603 of the Code, 26 P.S. §1-603.

Since the Code did not define when machinery, equipment, and fixtures become part of the real estate, our Supreme Court fashioned the so-called Assembled Economic Unit Doctrine to meet this problem. The doctrine attempts to preserve the economic status of a condemnee by moving the condemnee and establishing a comparable economic unit elsewhere.

Under the doctrine, where the condemned building is so unique that a comparable building was not available or adaptable within a reasonable distance from which the condemnee drew his patrons, all machinery, equipment, and tools, even though they could be moved, may nevertheless be left there by the owner, and he will be entitled to receive the fair market value, in place, *as part of the real estate. Singer v. Oil City Redevelopment Authority,* 437 Pa. 55, 261 A.2d 594 (1970); *Redevelopment Authority of Erie v. Pulakos,* 17 Pa. Commonwealth Ct. 251, 330 A.2d 869 (1975).

It is the function of the jury to determine whether the Assembled Economic Unit Doctrine applies to the facts of a particular case, based on credibility and the

weight of the testimony. *Benkovitz Appeal,* 56 Pa. Commonwealth Ct. 523, 425 A.2d 1178 (1981). This case was tried on the basis of this doctrine. The nature of the business and the uniqueness of the building was such that no other building within a reasonable distance from which condemnees drew their patrons was available or adaptable to the functioning of the business as an economic unit. There was testimony in the record to that effect. The building, land, machinery, equipment, and fixtures became part of the real estate, to be valued as such, in place, at the fair market value.

The trial court was correct, when it instructed the jury:

In this case, the plaintiffs-condemnees have already received payment for the machinery, equipment and fixtures forming part of the real estate taken, and you should therefore reduce the amount of damages by the fair market value of the machinery, equipment and fixtures for which the plaintiffs have already received compensation. The condemnees, the Sepesys, have produced evidence that they have received the sum of $17,465 as the fair market value of the machinery, equipment and fixtures.

How does the fact that this real estate has *use value* because of the liquor license impact on the valuation of the real estate? Use is an extremely important factor to be considered by an expert in formulating his opinion of fair market value.

The issuance of a liquor license in Pennsylvania constitutes governmental 'permission' to use *particular premises* for a particular purpose. . . . it cannot be disputed that a liquor license adds significant use value to a particular premises. . . . The use value added to a particular premises by a liquor license is not unlike the

use value which a premises enjoys because it may be used for a particular purpose under a zoning enactment.

*Redevelopment Authority of the City of Philadelphia v. Lieberman,* 461 Pa. 208, 222, 336 A.2d 249, 257 (1975) (emphasis in original).

This concept was further elaborated in *1412 Spruce Street, Inc. v. Pennsylvania Liquor Control Board,* 504 Pa. 394, 474 A.2d 280 (1984), where the court indicated that it is not the per se existence of a liquor license that is the inquiry, but rather the value of the business property where it has the opportunity for business income. In other words, it is the opportunity for business income brought about by the liquor license that affects the value of the real estate. This is in line with the concept of ownership of property which is viewed as the accumulation of legal interests in the physical object, rather than the physical object itself, and includes such things as the right to possess, use, and dispose of the physical object. *Lieberman.*

The real estate appraisal expert is confronted with this problem of enhancement in the value of the real estate, and how it is measured, when he formulates his opinion of its fair market value. An expert may testify as to what facts and data he considered in arriving at his opinion, subject to cross-examination to determine credibility and weight of his testimony, and the trial judge's responsibility in controlling the relevancy of such evidence. *Commonwealth v. 108.3 Acres of Land,* 431 Pa. 341, 246 A.2d 124 (1968).

The trial court, also confronted with this problem, instructed the jury:

In this case, the entire land and building was taken so that the after value of the land and building was zero, but you must determine the fair market value of the liquor license after the condemnation as well as before it.

> For purposes of considering damages in eminent domain, a restaurant-liquor license is a property interest and a value thereof is an element to be considered in computing the damages resulting from the condemnation. In determining the value of such license immediately before the condemnation and as unaffected by it, you should consider its value and use as part of a going restaurant-tavern business and in considering the value of such a license after the condemnation and as affected by it. You should consider the value detached from the going business and not in use.

The trial court did not refer to "enhanced value" or "opportunity for business" in its charge. It did refer to the liquor license as a property interest and a value to be considered as part of a going business.

The testimony of Mr. Miller, condemnees' expert, was:

> [T]he best way to start on this is to start with the cost of a good sold . . . using a factor of anywhere from two to four times the cost of goods sold according to where your location would be, the type of restaurant . . . would determine the factor you would use to determine the value.
>
> . . .

This appraisal technique, together with the facts and data used, is subject to impeachment by cross-examination, but its weight is determined by the jury.

The charge of the court, while not a model of clarity, viewed in its entirety, fairly instructed the jury to consider the value of the liquor license not as a separately calculated element of damages, but rather as a factor in determining the extent to which it increased the value of the real estate at the time of the taking. Since this was a complete taking, the reference to after value of

the license was a factor in considering the extent to which the value of the real estate was enhanced at the time of taking.

Mr. Miller, in his testimony on value, referred to goods sold, and not to profit. He indicated correctly that it is difficult to get a true picture if profit was considered because of skimming by the owner, or the bartender walking off with the profits. The court did not err in permitting this testimony. The dollar value of the drinks was considered in determining the extent to which the value of the land was enhanced through the sale of the liquor. Profits are inadmissible because so much depends on the owner's skill in operating a restaurant with a bar, so that such evidence is too speculative.

In *Deer Creek Drainage Basin Authority v. Pacoma, Inc.,* 87 Pa. Commonwealth Ct. 492, 487 A.2d 1033 (1985), this court found no error in the trial court's charge that "[e]vidence of the loss of income from a decline in the patronage of the Plaintiff's golf course . . . may be considered by you as a factor in determining the fair market value of Plaintiff's property. . . ." *Id.* at 496, 487 A.2d at 1035.

At trial, Mr. Fine, an expert testifying for condemnees, gave a valuation different from the valuation he testified to at the Board of View Hearing. Condemnor contends that when Fine changed his opinion, condemnor should have been notified, and that it was error to permit such testimony. Section 703(2) of the Code, 26 P.S. §1-703(2), provides:

> If any valuation expert who has not previously testified before the viewers is to testify, the party calling him must disclose his name and serve a statement of his valuation of the property before and after the condemnation and his opinion of the highest and best use of the property before the condemnation and of any part thereof

remaining after the condemnation, on the opposing party at least ten days before the commencement of the trial.

Here, Mr. Fine did testify at the Board of View hearing, and secondly, this was a complete taking with no after value.

Accordingly, we affirm the trial court.

ORDER

NOW, July 2, 1987, the order of the Court of Common Pleas of Washington County, at No. 150 October Term 1982, dated April 10, 1986, is affirmed.

Judge PALLADINO dissents.