In re Condemnation by the Pennsylvania Turnpike Commission Of 14.38 Acres in Fee Simple, in North Beaver Township, Lawrence County, Commonwealth of Pennsylvania, for the Beaver Valley Expressway Project.

Appeal of Condemnees James C. BRIGHT and Virginia Bright, and Douglas McKibben, Appellants. (Two Cases)

In re Condemnation by the Pennsylvania Turnpike Commission of 14.38 Acres in Fee Simple, in North Beaver Township, Lawrence County, Commonwealth of Pennsylvania, for the Beaver Valley Expressway Project.

Appeal of PENNSYLVANIA TURNPIKE COMMISSION, Appellant.

Commonwealth Court of Pennsylvania.

Argued March 12, 1996.
Decided July 1, 1996.

Daniel I. Herman, for Appellants.

Samuel P. Kamin, for Appellee.

Before DOYLE and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

James C. Bright, Virginia Bright and Douglas McKibben (collectively, Condemnees), owners and lessee of a parcel of land which was condemned and taken by the Pennsylvania Turnpike Commission (Commission), appeal from that part of an order of the Court of Common Pleas of Lawrence County (trial court) denying Condemnees' request for damages under the Assembled Economic Unit Doctrine, holding that the doctrine was not applicable in determining the amount of damages from the taking. The Commission, in turn, appeals from that part of the trial court's order holding that the Condemnees are severally entitled, as owners and lessee of the property, to damages pursuant to section 610 of the Pennsylvania Eminent Domain Code (Code).[1]

The Brights own a 49 acre property (Bright farm), which they lease to McKibben, who, since 1986, has used the property to operate a small dairy farm. To use the property for this purpose, McKibben had to make extensive renovations to the existing barn, which had previously been used for non-dairy purposes. At this time, Condemnees were also leasing a comparably-sized nearby property (Benson farm) on which they kept cows which were not currently producing milk or were pregnant, (Board of Viewers' Findings of Fact, 68 & 72; R.R. at 33–34a),[2] and were also leasing a 40+ acre parcel known as the Gilmore farm, which is located a few miles past the Benson farm and used for growing hay for the cattle, (Board of Viewers' Finding of Fact, No. 70).

On November 29, 1989, pursuant to the Code,[3] the Commission filed a Declaration of Taking which condemned 14.38 acres of the property including the renovated dairy barn and the adjacent pole barn for a new road; the new road also blocked access to Edwards Run, a stream on the property which had been used to water the cattle. After the taking, Condemnees felt that the decreased size of the property prevented them from operating a dairy farm due to the space required for legal, practical and financial reasons. (Board of Viewers' Finding of Fact, No. 57.) Condemnees sought damages for the loss and argued before the Board of Viewers (Board) that they are entitled to damages under the Assembled Economic Unit Doctrine.[4]

> [W]hen the nature of the business requires a unique building for its operation, such that no other building within a reasonable distance is adaptable to the functioning of this business, then the condemned building, itself, will be considered an essential part of any meaningful economic unit in this industry. In this situation, even though all or most of the machinery, equipment and fixtures are removable, since no new site is available, condemnee cannot maintain his economic position by relocating. Therefore, *all* machinery, equipment and fixtures which are vital to the economic unit and a permanent installation therein will be considered a part of the real estate of the condemned property under the Assembled Economic Unit Doctrine. Only thus can the condemnee receive "just compensation."

---

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–610.

2. We note that the Boards Findings of Fact are only inferentially findings. In actuality, the findings of fact are restatements of testimony which it is apparent the Board adopted.

3. 26 P.S. § 1–101—1–901.

4. In *Singer v. Redevelopment Authority of the City of Oil City,* 437 Pa. 55, 261 A.2d 594 (1970), our supreme court said that the doctrine may be applied under two sets of circumstances: one, where that portion of a business which is removable would not be sufficient to permit the owner to constitute a comparable economic unit in a new location; and the other,

At hearings before the Board to determine whether Condemnees were entitled to damages for the taking, Condemnees presented the testimony of McKibben, James Bright, Francis Newell, an expert appraiser, and Richard English, an expert real estate appraiser.

McKibben described the dairy barn, which was used for milking and feeding the cows. According to McKibben, the lower level of the custom built barn contained concrete stalls, beds, feed bunks and tie stalls where the cows could be individually tied and taken care of with their own water and feed spaces. (R.R. at 13a.) All of the necessary construction was performed by McKibben himself.[5] McKibben also testified that, after receiving notice that he had to vacate the barn within thirty days, he was forced to chemically dry up his cows to stop milk production and, eventually, because he could not move his operation to another suitable site, sold them at auction in 1990 at an estimated loss of $18,876.05. (Board's Findings of Fact, Nos. 21 and 23–24; R.R. at 32–37a.) McKibben testified that there were no other appropriate properties for sale in the area to which he could have moved the dairy farm, (R.R. at 373a), because, in addition to requiring a dairy barn and sufficient acreage to run a successful dairy farm, an on-premises residence is necessary so that the operator can be nearby for calving and the twice-daily milking. (R.R. at 375–77a.) McKibben felt that the Benson farm was an inappropriate property on which to relocate the business because there was no house on the property and the cost of renovating it into a dairy farm was prohibitive. (R.R. at 378a.)

McKibben's grandfather, James Bright, testified that they could not operate a dairy farm on the remaining property due to the decreased size, loss of access to the stream and, primarily, loss of the dairy barn, and that there were no similar available properties to which they could have moved. (R.R. at 254–56a and 304a.) Bright testified that the Benson farm was not appropriate because there was no milking barn, only an open free stall barn,[6] (R.R. at 297a); the Gilmore farm did not even have a barn and was used only for growing crops, (R.R. at 302–03a).

Newell, the expert appraiser, testified to the value of the machinery and equipment contained in the condemned barn, which he estimated to be $111,821.00. (R.R. at 74a.) On cross-examination, however, Newell admitted to not having many of his notes and calculations with him and that he was unaware of exactly how old certain pieces of equipment were and whether they had been purchased new or used. On re-direct examination, Newell explained that such information is not necessarily relevant for appraising the value of an item.

English, the expert real estate appraiser, testified that the best use of the condemned property would have been the continued use of it as an operating dairy farm, (R.R. at 164a), and that he had been unable to locate any available dairy farm to which Condemnees could have transferred the operation, although he did find three comparably sized non-dairy farms which he considered to be inappropriate for Condemnees' needs. (R.R. at 166a, 173a, 189–92a, 246–47a.) English testified further that the Condemnees could not have continued the dairy farm on the reduced acreage due to the need for

----

. . . .
In view of this, in order for the Assembled Economic Unit Doctrine to apply here, appellant would have to show there was no other building within a reasonable distance which could have been suitably adapted to the functioning of his business.

*Id.* at 67–68, 261 A.2d at 600–01 (emphasis added).

5. Specifically, McKibben testified that he jacked up the barn to add a second level, poured the cement foundation and ramp to the manger, installed an oak floor with timber he cut from trees on the property, constructed the stalls and stanchions used to restrain cows during milking, and built and roofed the adjacent pole barn. (R.R. at 367–69a.) The barn also contained a manure cleaner which had been custom installed to the length of the barn. (R.R. at 22a.)

6. In a milking barn, there are individual stalls where the cows can be tied to stanchions while being milked and fed. In contrast, an open free stall barn is merely a four-sided structure in which the cows can be sheltered, but roam about freely.

minimum acreage needed per cow,[7] (R.R. at 170a), and that the loss of access to the stream affected the operation of the farm, (R.R. at 174a). In his appraisal, English treated the Bright farm as an Assembled Economic Unit. (R.R. at 174a.)

In opposition to Condemnees' claim, the Commission presented the testimony of Francis Chiapetta, an expert real estate appraiser. While Chiapetta agreed that the best use of the property is as a small farm, he disagreed that the building was unique for purposes of the Assembled Economic Unit Doctrine and that the dairy operation was incapable of being relocated. (R.R. at 388a.) In fact, Chiapetta believed that there were suitable properties available to Condemnees, even though he was not aware of any currently functioning as dairy farms. (R.R. at 388–96a, 402a.) On cross-examination, Chiapetta stated that, in his opinion, any structure could be adapted to function as a dairy barn.[8] (R.R. at 401a.) On re-direct, Chiapetta explained that he believed the other properties could be adapted to be dairy barns because the condemned dairy barn had been so adapted and that, contrary to Condemnees' assertions, there is no necessity for housing upon a dairy farm. (R.R. at 419a.)

Based upon the evidence presented at the hearing, the Board concluded that Condemnees failed to prove that the portion of their dairy farm that was condemned was so unique that a comparable facility was not available or adaptable within a reasonable distance from their farm. (Board's Conclusion of Law, No. 1.) Specifically, the Board noted that the condemned barn itself had been adapted for dairy farming and that Condemnees also had use of the nearby Benson and Gilmore farms which could have been used for the dairy farm. (Board's Conclusion of Law, No. 1.) Finding the pre-condemnation value of the property to be

$129,000.00 and the post-condemnation value of the property to be $57,000.00, the Board awarded Condemnees damages of $72,000.00. (R.R. at 448–63a.) The Board did not award any damages under the Assembled Economic Unit Doctrine.

Condemnees appealed the Board's decision to the trial court, arguing that the Board erred in determining that the Assembled Economic Unit Doctrine was not appropriate for calculating their damages. The trial court examined the record and held that the Assembled Economic Unit Doctrine was not applicable for the same reasons expressed by the Board, but reversed the Board's determination that Condemnees are not severally entitled to damages under section 610 of the Code. (R.R. at 469–71a.)

On appeal,[9] Condemnees argue that the trial court erred by not allowing a jury to decide whether the Assembled Economic Unit Doctrine should be applied. The Commission argues on appeal that the trial court erred in reversing the Board's determination that Condemnees are not severally entitled to damages under section 610 of the Code.

Here, Condemnees attempted to show the uniqueness of the dairy barn and the impossibility of relocation by presenting extensive testimony regarding the construction of the dairy barn and the operations and needs of a dairy farm, including necessary facilities, acreage, location and equipment. The Commission's expert, however, disputed Condemnees' assertions, arguing that relocation was, indeed, possible and that the dairy barn was not so unique.

◼ Thus, the conflicting testimony from the parties created a question of fact regarding whether Condemnees had shown that there was no other building within a reasonable distance which could have been suitably

---

7. Approximately one acre of land is required per dairy cow. Therefore, before the condemnation, Owners were producing at maximum capacity with about 50 cows on approximately 49 acres. Because at least 45–55 head of cattle are necessary for a dairy farm to be profitable, the reduced acreage of the Bright farm after the condemnation prevented profitable dairy farming. (R.R. at 170–71a.)

8. Chiapetta opined that even the Lawrence County courthouse could be adapted for use as a dairy barn. (R.R. at 401a.)

9. Our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Redevelopment Authority of the County of Washington v. Sepesy,* 107 Pa.Cmwlth. 227, 528 A.2d 287 (1987).

adapted to the functioning of the dairy farming business. Because Condemnees had requested a jury trial and it is the function of the jury to determine, based upon the credibility and weight of the testimony, whether the Assembled Economic Unit Doctrine applies to the facts of a particular case, *See Redevelopment Authority of the County of Washington v. Sepesy*, 107 Pa.Cmwlth. 227, 528 A.2d 287 (1987); *Benkovitz v. Urban Redevelopment Authority of the City of Pittsburgh*, 56 Pa.Cmwlth. 523, 425 A.2d 1178 (1981), the trial court erred by usurping the jury's entitlement to make this factual determination. We must, therefore, vacate this part of the trial court's order and remand with instructions that the issue of the Assembled Economic Unit Doctrine's applicability to this case be determined by the jury, not the trial court.

■ We next address the Commission's allegation of error. Section 610 of the Code provides:

> The owner of any right, title, or interest in real property acquired or injured by an acquiring agency, who is not eligible for reimbursement of such fees under sections 406(e), 408 or 609 of this act, shall be reimbursed in an amount not to exceed five hundred dollars ($500) as payment toward reasonable expenses actually incurred for appraisal, attorney and engineering fees.

26 P.S. § 1–610. The Commission argues that, because the Brights and McKibben had a "joint interest" in the dairy farm, they are not severally entitled to damages under section 610 of the Code. We disagree. Section 610 is clear that anyone with a right, title or interest in a property condemned under the Code is entitled to a maximum of $500 reimbursement for appraisal, attorney and engineering costs. Here, the Brights are entitled to section 610 damages as owners of the property, *Millcreek Township Sewer Authority v. Anderson*, 40 Pa.Cmwlth. 40, 397 A.2d 26 (1979), and McKibben is entitled as the holder of a leasehold interest in the property, *Graham Realty Co. v. Department of Transportation*, 67 Pa.Cmwlth. 318, 447 A.2d 342 (1982). Thus, the trial court did not err in granting both the Brights and McKibben damages under section 610 of the Code.

Accordingly, that part of the order of the trial court holding the Assembled Economic Unit Doctrine inapplicable is vacated and this case is remanded. We affirm, however, that part of the trial court's order granting section 610 damages to both the Brights and McKibben.

### ORDER

AND NOW, this 1st day of July, 1996, that part of the order of the Court of Common Pleas of Lawrence County, dated May 9, 1995, holding the Assembled Economic Unit Doctrine inapplicable to this case, is vacated and this case is remanded to the Court of Common Pleas of Lawrence County. We affirm that part of the order granting damages under section 610 of the Pennsylvania Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–610 to James C. Bright and Virginia Bright, owners of the condemned property, and to Douglas McKibben, lessee of the condemned property.

Jurisdiction relinquished.

DOYLE, Judge, concurring and dissenting.

I respectfully dissent from that part of the majority opinion which reverses the trial court's judgment that the Assembled Economic Unit Doctrine is not applicable to the facts in this case. The trial court's judgment in this respect should be affirmed. *See Singer v. Oil City Redevelopment Authority*, 437 Pa. 55, 261 A.2d 594 (1970).

I join with the majority and would likewise affirm the trial court's judgment that awarded both condemnees damages under Section 610 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–610.